VENNEN, Administratrix, Appellant, vs. NEW DELLS LUMBER COMPANY, Respondent.

*September 16—October 26, 1915.*

*Workmen's compensation: Statute construed: "Accident:" "Personal injury:" Typhoid fever.*

1. An employee who, as the result of drinking polluted water furnished by the employer at its factory, became sick with typhoid fever, was at the time of such injury "performing service growing out of and incidental to his employment," within the meaning of sec. 2394—3, Stats.

2. A personal injury "accidentally sustained" or "proximately caused by accident," within the meaning of sec. 2394—3, Stats., may be one which resulted from carelessness or negligence. The words should be given, as intended by the legislature, their popular meaning.

3. Typhoid fever contracted by an employee as the result of drinking polluted water furnished by the employer is a "personal injury accidentally sustained" and "proximately caused by accident," within the meaning of sec. 2394—3, Stats.

    BARNES, J., dissents.

APPEAL from an order of the circuit court for Eau Claire county: E. C. HIGBEE, Judge. *Affirmed.*

This is an action to recover damages alleged to have been sustained by the plaintiff as administratrix of her husband's estate and as his widow on account of her husband's death.

The defendant is a corporation organized under the laws of the state of Wisconsin. The deceased, Gerhard Vennen, was employed by the defendant during the spring and early summer of the year 1914. The defendant was engaged in operating a manufacturing lumber establishment located on the Chippewa river in the city of Eau Claire, Wisconsin. In connection with its establishment the defendant maintained an outhouse and two toilets for its employees working there and a toilet in its principal office building. All of the sewage from these toilets was discharged into the river near defendant's establishment. The pleadings allege that the defendant in supplying water for its boilers not only secured water from the city waterworks, but also used water from the river, which was obtained by means of intake pipes; that the defendant was negligent in placing its intake pipes in such location that they carried into the boilers water that was contaminated by the sewage, and that this water through defendant's negligence became mixed with the water from the city waterworks because of improper connecting pipes. It is further alleged that the defendant negligently permitted and caused the employees to drink of this polluted water and thereby caused the deceased, Gerhard Vennen, to become sick with typhoid fever, which resulted in his death on July 25, 1914.

The defendant alleges and claims that the court had no jurisdiction of the matter because the defendant at the time

here in question had more than four employees engaged in a common employment and that it had filed notice of election to accept the provisions of the Workmen's Compensation Act, and that the plaintiff's intestate had never filed any election not to accept the provisions thereof.

Plaintiff demurred to this defense on the ground that it did not state facts sufficient to constitute a defense. The circuit court ordered that the demurrer be overruled. From such order this appeal is taken.

For the appellant there was a brief signed by *Fred Arnold*, attorney, and *Daniel H. Grady*, of counsel, and oral argument by *Mr. Grady*.

For the respondent there was a brief by *Sturdevant & Farr*, and oral argument by *L. M. Sturdevant*.

SIEBECKER, J. This appeal presents an important question as to the liability and nonliability of employers under the provisions of the Workmen's Compensation Act. The ruling upon the demurrer to the answer assumes that the facts stated in the pleading exist as alleged, regardless of evidence in respect thereto. Sub. (3), sec. 2394—3, Stats., provides that where the right to compensation under the provisions of the Workmen's Compensation Act exists for personal injury or death, it shall be the exclusive remedy against the employer for such injury or death. *Milwaukee v. Althoff*, 156 Wis. 68, 145 N. W. 238; *Smale v. Wrought Washer M. Co.* 160 Wis. 331, 151 N. W. 803.

By sec. 2394—3 it is enacted:

"Liability for the compensation hereinafter provided for, in lieu of any other liability whatsoever, shall exist against an employer for any personal injury accidentally sustained by his employee, and for his death, in those cases where the following conditions of compensation concur: . . .

"(2) Where . . . the employee is performing service growing out of and incidental to his employment. . . .

"(3) Where the injury is proximately caused by accident,. and is not intentionally self-inflicted."

The facts alleged show that the parties to the action were subject to the Compensation Act. The inquiry then is, Was. Vennen's death proximately caused by accident while he was. "performing service growing out of and incidental to his employment"? The inference from the alleged facts is reasonably clear that Vennen at the time of the alleged injury resulting in his death was "performing service growing out of and incidental to his employment." The contention that an injury resulting from carelessness or negligence is not one that can be said to have been accidentally sustained in the sense of the Compensation Act is not well founded. As declared in *Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 142 N. W. 271, "In giving construction to such statutes words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject matter relative to which they are employed." The words should be given, as intended by the lawmakers, their popular meaning. *Sadowski v. Thomas F. Co.* 157 Wis. 443, 146 N. W. 770. "A very large proportion of those events which are universally called accidents, happen through some carelessness of the party injured, which contributes to produce them. . . . Yet such injuries, having been unexpected and not caused intentionally or by design, are always called accidents, and properly so." Accidents without negligence are rare as compared to accidents resulting from negligence. Opinion of PAINE, J., in *Schneider v. Provident L. Ins. Co.* 24 Wis. 28. The intention of the legislature to include accidental injuries resulting from negligence within the language of the Compensation Act is so manifest that there is no room to indulge in construction of the language employed. In the popular sense the words as used in the Compensation Act, referring to a.

personal injury accidentally sustained by an employee while performing services growing out of and incidental to his employment, include all accidental injuries, whether happening through negligence or otherwise except those intentionally self-inflicted.

The inquiry is, Was the disease from which it is alleged Vennen died proximately caused by accident? Do the facts and circumstances alleged in the case set forth the conditions to entitle an employee to compensation "for any personal injury accidentally sustained" which was "proximately caused by accident" while "performing service growing out of and incidental to his employment"? We have already noticed that the alleged injury was, under the facts stated in the pleadings, received by deceased while in plaintiff's employ and while he was "performing service growing out of and incidental to his employment." Whether or not the alleged accidental injury caused Vennen's death is sufficiently pleaded and remains a question for determination from the evidence at the inquest of the case. There remains the important inquiry, Do the allegations state a case showing that Vennen's death is attributable to "accident" in the sense of the Compensation Act? It is urged that the contracting of typhoid disease, under the facts and circumstances stated, does not show that his death was due to an accidental occurrence. The term "accidental," as used in compensation laws, denotes something unusual, unexpected, and undesigned. The nature of it implies that there was an external act or occurrence which caused the personal injury or death of the employee. It contemplates an event not within one's foresight and expectation, resulting in a mishap causing injury to the employee. Such an occurrence may be due to purely accidental causes or it may be due to oversight and negligence. The fact that deceased became afflicted with typhoid fever while in defendant's service would not, in the sense of the statute, constitute a charge that he sustained an accidental injury, but the allegations go

further and state that this typhoid affliction is attributable to the undesigned and unexpected occurrence of the presence of bacteria in the drinking water furnished him by the defendant as an incident to his employment.   These facts and circumstances clearly charge that Vennen's sickness was the result of an unintended and unexpected mishap incident to his employment.   These allegations fulfil the requirements of the statute that the drinking of the polluted water by the deceased was an accidental occurrence while he was "performing service growing out of and incidental to his employment."   It is alleged that the consequences of this alleged accident resulted in afflicting Vennen with typhoid disease, which caused his death.   Diseases caused by accident to employees while "performing service growing out of and incidental to his employment" are injuries within the contemplation of the Workmen's Compensation Act.   This was recognized in the case of *Heileman B. Co. v. Industrial Comm.,* *ante,* p. 46, 152 N. W. 446, and *Voelz v. Industrial Comm.,* *ante,* p. 240, 152 N. W. 830.   The English Compensation Act made employers liable to employees for "personal injury by accident arising out of and in the course of the employment."   Under this act it has been held that contraction of a disease may be caused by accident.   See the following cases: *Brintons v. Turvey,* [1905] A. C. 230.   A workman became infected through a bacillus from the wool which he was assorting, resulting in giving him the disease of anthrax of which he died, and it was held that it was a case of "injury by accident."   *Alloa C. Co. v. Drylie,* [1913] 1 Scots L. T. 167, 4 N. & C. C. A. 899.   Drylie, a workman in a coal pit, through accident was exposed to icy cold water up to his knees and became chilled which made him sick, resulting in pneumonia of which he died.   Upon the evidence adduced the court found that the pneumonia was caused by the chill and that death resulted from "injury by accident."   The cases wherein liability has been found distinguish between

disease resulting from accidental injury and disease which results from an idiopathic condition of the system and not attributable to some accidental agency growing out of the employment. The latter class of diseases are held not to be within the contemplation of the act.

We are of the opinion that the decision of the trial court holding that the facts pleaded show that Vennen's death was caused by accident while performing service growing out of and incidental to his employment is correct and that the demurrer was properly overruled.

*By the Court.*—The order appealed from is affirmed.

BARNES, J. (*dissenting*). By sec. 2394—3 liability exists under the Compensation Act, where employer and employee are under it, (1) for "any *personal injury* accidentally sustained" by the employee while "performing service growing out of and incidental to his employment, . . . where the injury is proximately caused by accident, and is not intentionally self-inflicted," and (2) for death where the employee is performing such service and where the injury causing death is "proximately caused by accident" and not intentionally self-inflicted.

To justify recovery under this statute, where death does not ensue, there must be a *personal injury actually sustained,* which injury is proximately caused by accident. Where recovery is sought for death, the statute does not in express terms say that a personal injury must actually be sustained, but only that there must be an injury "caused by accident."

I think it is very improbable that the legislature intended to give compensation where death resulted from an accident and deny it in case of mere disability, and that by fair implication it was intended to allow compensation for death only where it resulted from "personal injury." In other words, if recovery can be had in case of death from typhoid fever, then indemnity should be allowed for disability and

medical attendance in case of recovery. If this be so, then two things must occur as a condition precedent to recovery: there must be a personal injury and it must be caused by accident. If the taking of typhoid germs into the system is a "personal injury" and an "accident" within the meaning of the law, then the decision is right. If there can be a recovery in the case of typhoid fever, then the same result would follow for tuberculosis, pneumonia, smallpox, anthrax, ordinary colds, and other diseases, where the sick employee was able to trace the cause of his sickness to some unusual conditions in the surroundings in which he worked. If I understand the opinion correctly, most if not all diseases may be accidental, and recovery may be had on account of the same, except those of an "idiopathic" character. Idiopathy is defined as "a morbid state or condition not preceded and occasioned by any other disease; an individual or personal state of feeling; a mental condition peculiar to one's self." Idiopathic is defined as "of or pertaining to a morbid state; not secondary or arising from any other disease; as an idiopathic affection." Cent. Dict.

The peculiar concern of this court is to get at the legislative intent. When the court ascertains that intent, it has not only performed its full duty but has exhausted its legitimate powers. It has no right to curtail or extend the provisions of any statute.

The Compensation Act as now construed by the court will, I think, add materially to the liabilities popularly supposed to exist under the act, if it does not double them. If the legislature so intended, well and good. I cannot bring myself to believe that it did so intend.

It is a matter of common knowledge that cases of sickness and disease are much more numerous than cases of what are commonly known as accidents. The Compensation Act was passed after an exhaustive study of the subject of industrial insurance by a committee of the legislature which covered a

period of two years.    There were two classes of acts in operation in other jurisdictions, one covering diseases and accident, the other, not in terms at least covering disease.    If it had been the purpose of the legislature to include the large class of cases that would result from sickness, it is fair to presume that it would have done so in express and unmistakable terms, and not by the use of language that is at least popularly understood not to include them.    In the numerous discussions on the proposed law before the legislature, which are fresh in mind, it does not appear to have occurred to any one that diseases were included or intended to be included.    In the four years that have elapsed since the original act was passed thousands of cases of sickness other than those of an "idiopathic" character must have arisen where there was ground for claiming that the sickness was contracted in the course of employment, and yet this is the first case where the claim was made that the Compensation Act applies to sickness.    Even the representative of the deceased is not making such a claim here.    On the contrary she is resisting it and insisting that she is free to pursue her common-law remedy.

Now the words "personal injury" are words commonly and ordinarily used to designate injury caused by external violence, and they are not used to indicate disease.    Neither do we speak of sickness as an "accident" or an "injury."    When we hear that someone has suffered an accident we at once conclude that he has suffered some more or less violent external bodily injury.    It is in this sense, I think, that the words "personal injury" and "injury . . . caused by accident" are used in the statute.    When our neighbor has typhoid fever, we do not think of classifying his ailment as an "accident," an "injury," or a "personal injury."    It is only by an extremely far fetched and I believe illogical construction of the words referred to that they can be held to include disease not resulting from some external violence.

It is well nigh a demonstrable certainty that the legislature

never intended to provide compensation for sickness not re-
sulting from external bodily violence.   Wisconsin was one of
the pioneers in this kind of legislation.   It was known that it
would entail large burdens on our manufacturers, who would
thus be placed at a disadvantage in competing with employ-
ers in other states where no such law was then in existence.
The law was an optional one and is so yet.   As was expected,
there was a great deal of hesitancy on the part of employers
about coming under it.   Had it been supposed that it pro-
vided compensation for disease or sickness, it is probable
that the purpose of the law would have been practically nul-
lified.   The effect of the decision in this case is of course
conjectural, but it is not without the range of possibilities
that some at least of those who are now under the act will ex-
ercise their election not to remain under it.   It is now a gen-
erally accepted truism that many diseases attack those who
are physically weak and run down rather than those who are
strong and able to throw off unwelcome disease germs.   The
weak must work as well as the strong or else be taken care of
by the public, and should they be discriminated against in
the matter of securing employment much harm would follow.
The question whether we should or should not have insur-
ance against sickness is one of legislative policy.   The man-
ner of paying such insurance, if decided upon, is also a ques-
tion of legislative policy within constitutional limits.   I do
not question the power of the legislature to pass an option
law such as we have providing for indemnity against disease.
What I do say is, that the legislature has not done so, and
that the act passed has been stretched by construction so as
to add to it, in all probability, as large a class of claims and
liabilities as that actually included in the original act.

The great weight of authority is contrary to the decision
in this case.   In *Fenton v. Thorley & Co.* [1903] A. C. 443,
it is said that the words "by accident" are used to qualify
the word "injury," confining it to certain classes of injuries

and excluding other classes, as, for instance, injuries by disease or injuries self inflicted by design. In *Broderick v. London County Council,* [1908] 2 K. B. 807, 15 Am. & Eng. Ann. Cas. 885, the inhalation of sewer gas by which an employee contracted enteritis was held not to be a personal injury by accident. Paralysis resulting from exposure to contact with lead was held not to be an injury caused by accident. *Steel v. Cammell, L. & Co.* [1905] 2 K. B. 232, 2 Am. & Eng. Ann. Cas. 142. An abscess in the hand produced by continuous rubbing of a pick handle held not to be an injury produced by accident. *Marshall v. East Holywell C. Co.* 93 L. T. Rep. 360. Working with a blistered finger among red lead and oil which produced an inflammation and swelling not an injury produced by accident. *Walker v. Lilleshall C. Co.* [1900] 1 Q. B. 488. Copper poisoning resulting from contact with dust produced by filing is not an injury produced by accident. *Hichens v. Magnus M. Co.* 35 N. J. Law J. 327. Death from anthrax from handling animals that died from this disease held not injury caused by accident. *Sherwood v. Johnson,* 5 Butterworth's Workm. C. C. 686.

The Michigan court has held that since an accident is an unforeseen event occurring without design, the Compensation Act of that state (which is similar to ours on the point under discussion) does not cover occupational diseases, which are diseases arising from causes incident to certain employments. *Adams v. Acme W. L. & C. Works,* 182 Mich. 157, 148 N. W. 485.

Kindred cases dealing with the subject under consideration have arisen under policies of accident insurance. They hold that disease not resulting from or produced by external violence is not an accident for which recovery can be had under such contracts. *Bacon v. U. S. Mut. Acc. Asso.* 123 N. Y. 304, 25 N. E. 399; *Smith v. Travelers Ins. Co.* 219 Mass. 147, 106 N. E. 607; *Sinclair v. Maritime P. A. Co.*

107 Eng. C. L. 478; *Dozier v. Fidelity & C. Co.* 46 Fed. 446.

By sec. 2394—11, Stats., it is provided that no claim to recover compensation under secs. 2394—3 to 2394—31, inclusive, shall be maintained unless, within thirty days after the occurrence of the accident which is claimed to have caused the injury or death, notice in writing be given to the employer stating the time and place of the injury. This must mean that the legislature had in mind something definite and tangible, something that could be located as to time and place, where it used the word "accident." I do not see how this statute can be complied with in a typhoid fever case.

The New Jersey court, following what it conceives to be the English rule, holds that "where no specific time or occasion can be fixed upon as the time when the alleged accident happened, there is no injury by accident within the meaning of the compensation act." *Liondale B., D. & P. Works v. Riker,* 85 N. J. Law, 426, 89 Atl. 929.

The latest expression of the English courts on the subject to which attention has been called is *Eke v. Hart-Dyke,* [1910] 2 K. B. 677. There a laborer died from ptomaine poisoning caused by the inhalation of sewer gas. It was held that this was not an injury caused by accident, one of the concurring judges saying that there could be no recovery for injury by accident where you cannot give a date, and adding: "It is hardly a lawyer's question."

The *Brintons Case* (*Brintons v. Turvey,* [1905] A. C. 230) cited in the majority opinion is discussed in *Eke v. Hart-Dyke,* where it is referred to as an extreme case, the logic of which could be approved only on the theory that the anthrax germ which was floating in the air and which lodged in the eye of the deceased produced an abrasion which developed infection. In the decision the case is compared with a spark flying from an anvil and injuring the eyesight.

The Scotch case cited in the opinion (*Alloa C. Co. v. Dry-*

*lie,* [1913] 1 Scots L. T. 167, 4 N. & C. C. A. 899) is authority for affirming the decision in the present case, but is much more restricted in its application than is the present decision. The opinion of Lord DUNDAS, which was concurred in by a majority of the judges, states:

"The present case could never be fairly cited in the future as indicating that the court is willing to hold that a mere ordinary disease (*e. g.* pneumonia) entitles a workman to compensation. The court must be satisfied . . : that the disease was attributable to some particular event or occurrence of an unusual and unexpected character incident to the employment, which could, in the light of the decisions, be fairly described as an accident."

I think this is the only decided case to which attention has been called which tends to support the decision of the court, while the cases to the contrary are numerous. In the two Wisconsin cases cited the disease for which recovery was allowed was proximately caused by an injury resulting from external violence.