HACKLEY-PHELPS-BONNELL COMPANY, Appellant, vs. IN-
DUSTRIAL COMMISSION OF WISCONSIN and another, Re-
spondents.

*April 27—May 15, 1917.*

*Workmen's compensation: Injury to employee while going for his*
*pay: Service growing out of and incidental to employment:*
*When employment terminates: Evidence.*

1. An employee going in the usual manner for his pay to a place
   designated by the employer is performing a service within his
   employment.
2. Thus, where an employee of a logging company in one of its
   camps, being about to take a vacation, was given a time slip
   and was told to go, as was customary, by one of the company's
   logging trains to its office in a village some miles away to get
   his pay, and while riding on such train was accidentally in-
   jured, it is *held* that he sustained such injury while in the em-
   ploy of the logging company and while "performing service
   growing out of and incidental to his employment," within the
   meaning of sub. (2), sec. 2394—3, Stats.
3. Although the employee testified in such case that when he re-
   ceived his time slip he was through with his work until he
   should come back again, this evidently referred only to such
   manual labor as he had been doing for his employer and was
   not conclusive upon the question whether the relation of em-
   ployer and employee terminated at that time.
4. It being held that at the time of the accident the employee was
   acting within the scope of his employment as fixed by the con-
   tract and custom of the parties, it is unnecessary to consider
   what bearing, if any, the provision in sub. (2), sec. 2394—3,
   Stats., relating to employees going to and from their employ-
   ment, has upon the case.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

In May, 1914, *Gus Drewetzki* was employed by an agent
in Chicago to work for plaintiff in a logging camp near
Phelps, Wisconsin. When he arrived at Phelps plaintiff's
bookkeeper sent him to the camp by its logging train and told
him to come to Phelps to get his pay. On February 8, 1915,
*Drewetzki* told the foreman of the camp that he was going to

take a vacation and the foreman told him to go to Phelps to get his money and gave him a time slip for that purpose. He also told him that the first train was gone and that he would have to walk and meet the other one. *Drewetzki* walked three or four miles from camp and then got on the train, and while riding thereon received an injury to his arm which necessitated amputation at the shoulder, for which injury he was awarded compensation. Employees usually went from the camp at which they were working to Phelps on the logging train and railway owned and operated by plaintiff, and *Drewetzki* paid no fare for rides he had had on the train. He says he was through with his work when he received his time till he came back again. The plaintiff's cashier and auditor testified:

"The company furnished a train for employees to go out to the camp. It came in twice a day and we always told them about what time it left for camp, and sometimes we held the train until the afternoon passenger train came in, when we had quite a number of men coming in a day, and told the train men to take them out. There is a special car outside of the regular car on the train when there is a crowd—a wood car which we are using in taking wood to the chemical works. This road out to the camp at which the applicant worked is owned by the company and is used for carrying logs and wood to the town of Phelps, but not to carry passengers. It carries no passengers or freight for hire."

Plaintiff's construction foreman testified:

"The applicant worked for me three or four years prior to February 8, 1915. He used to go to town and take a vacation and then come back. On February 8, 1915, right after dinner, he told me that he was going to take a layoff for a few days, so I gave him his time slip and told him he would have to go to the office for the rest of his time and get his money there."

The *Commission* found that *Drewetzki* received his injury while in the employ of the plaintiff and while performing service growing out of and incidental to his employment and

awarded him compensation according to the statute. Plaint-
iff brought an action in the circuit court for Dane county to
test the validity of the *Commission's* order awarding compen-
sation, and from a judgment confirming the order it appealed.

The cause was submitted for the appellant on the brief of
*Brown, Pradt & Genrich* of Wausau, and for the respondent
*Industrial Commission* on that of the *Attorney General* and
*Winfield W. Gilman,* assistant attorney general.

VINJE, J.   The ground upon which plaintiff seeks to set
aside the order of the *Commission* is that the employee was
not at the time of his injury in the employment of plaintiff
nor performing service incidental to or growing out of such
employment, and it is claimed that this is conclusively shown
because the employee testified that when he received his time
slip he was through with his work until he should come back
again.   There is no dispute about the facts.   That being so,
the question whether the relation of employer and employee
was terminated upon the receipt of the time slip is one that
must be determined from correct inferences drawn from the
undisputed facts.   The employee's opinion concerning it
could not bind the judgment of the *Commission* or that of the
courts.   But it is quite evident that the employee meant only
that he had no further work to do for the employer till he
came back—meaning by work only such manual labor as he
had been doing for the employer.   So the testimony relied
upon does not materially affect the question determined by
the *Commission.*

It appears from the evidence that Phelps was the head-
quarters for the logging operations of plaintiff.   The em-
ployee was sent there from Chicago.   He reported there for
duty and was told by the bookkeeper to go to the camp in
question, but that he had to come back to Phelps for his pay.
His employer furnished the employees transportation free to
and from the camps.   That such means of transportation

were primarily used for the transportation of logs is imma-
terial.    When the employee received his time slip he was told
by the foreman that he had to go to Phelps to get his pay and
he was informed that he could ride on the logging train, as he
had done before and as he knew the custom was.    The logging
road and train belonged to the employer and were used in the
prosecution of the business the employee was engaged in.
The essential elements of the contract of employment were
that the employee should render services for the employer and
in return therefor the employer should pay him an agreed
compensation.    The duty to pay and the right to receive the
compensation were integral parts of the contract of employ-
ment.    For the convenience of the employer the place of pay-
ment was some distance from the place of service, but in going
to and from such place of service the conveyance furnished
therefor by the employer was used by the employee.    So in
going to get his pay he was but fulfilling a duty imposed upon
him by the employer and using the means of conveyance
which the employer furnished his employees for such pur-
pose.

The general principle is that employment exists only in
the area of duty.    1 Bradbury, Workm. Comp. (2d ed.) 405.
Tested by this principle the employee comes within it.    He
was entitled under his contract to receive compensation for
his services.    His employer directed him to go to a place
some distance from his work to get his pay and offered him
the means of transportation for going there.    He went in
obedience to the duty placed upon him by his employer and
acquiesced in by him—performing the last act under the con-
tract whereby each could receive the full benefit thereof.
Had the employer paid him at the camp a different question
would be presented.

A number of cases are cited by the plaintiff holding that
employees receiving injuries while coming or going to their
employment in vehicles gratuitously furnished by the em-

ployer are not entitled to compensation. These do not touch the present case because those injuries were received before the employment began or after it terminated. Here the employee, as we have pointed out, was still performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract of employment were mutually satisfied.

If we turn to the text-books and decided cases on this subject we find that they sustain the view that an employee going in the usual manner for his pay to a place designated by the employer is performing a service within his employment. 1 Bradbury, Workm. Comp. (2d ed.) 438; 1 Honnold, Workm. Comp. 356; *Lowry v. Sheffield C, Co.* 1 Butterworth's Workm. C. C. 1; *Nelson v. Belfast Corp.* 1 Butterworth's Workm. C. C. 158; *Riley v. W. Holland & Sons,* 4 Butterworth's Workm. C. C. 155; *Re Phillips,* 1 Bull. Ind. Comm. of Ohio, 49. In *Lowry v. Sheffield C. Co., supra,* the facts were these: A collier left his work at 5 o'clock on a Saturday morning. At noon of the same day he went for his wages for a fortnight past. He went along a footpath which had been made by the employer for its workmen, and was going along the Great Central Railway line, which ran through the employer's premises, when he was knocked down by an engine and injured. He was not going to resume work till the following Sunday night. The court held that the employee was entitled to compensation, and through Cozens-Hardy, M. R., said:

"It is admitted that it was part of the contract of employment that the company should pay this man at their pay office and that he should go there to get his wages. While going to the pay office to get his wages he met with an accident on the company's premises. In these circumstances the court is asked to say the accident did not arise in the course of his employment. In my view it was just as much part of his employment to go to the pay office on that day at

that hour as it was to go down the pit on the following Sunday night."

In *Nelson v. Belfast Corp., supra,* it appeared that the workman went some distance from his place of work to get his pay and was injured while returning by being knocked down by a cart upon stepping off from a tram car. It also appeared that he was paid for the time consumed in going and coming, but his right to recover was not predicated upon the fact that he was paid for the time. Without referring to such fact the court held that the accident arose out of and in the course of the workman's employment. In *Riley v. W. Holland & Sons, supra,* the employee's work terminated on Wednesday. On the following Friday she went to the office to get her pay according to the custom of employees and was injured. The court held she was entitled to compensation, saying:

"Though her employment was at an end Wednesday night, in the sense that she ceased to work under the contract, yet the employment continued because of the obligation of the employers to her arising out of the employment and continuing until Friday noon."

In *Parker v. Pont,* 5 Butterworth's Workm. C. C. 45, compensation was denied to a workman who was going to get his pay and receive further instructions as to his work on the ground that he did not proceed by the usual means of conveyance but chose one more hazardous. This the court held he could not do at the risk of the employer.

Respondents rely upon sub. (2), sec. 2394—3, Stats. 1915, which provides that "Every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment." Since we have come to the conclusion that the employee was acting within the scope of his employment as fixed by the

contract and custom of the parties, we have not found it necessary to consider what bearing, if any, this statutory provision has on the subject.

*By the Court.*—Judgment affirmed, with costs in favor of the respondent *Drewetzki.*

