NEESE, Plaintiff and Respondent, v. STATE MEDICAL SOCIETY OF WISCONSIN and another, Defendants and Appellants : INDUSTRIAL COMMISSION, Defendant and Respondent.

*October 4—October 31, 1967.*

500

For the appellants there was a brief by *W. L. Jackman,* attorney, and *John D. Thiel* and *Hart, Kraege, Jackman, Wightman & Bieber* of counsel, all of Madison, and oral argument by *Arnold J. Wightman.*

For the respondent Industrial Commission the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent Neese there was a brief by *John C. Carlson* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Carlson.*

BEILFUSS, J. The principal issue is: Did the accident take place while the respondent-employee was engaged in a deviation from his employment and engaged in an act not reasonably necessary for living or incidental thereto within the meaning of the Workmen's Compensation Act?

The statute, sec. 102.03 (1) (f), provides:

"Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

As a necessary incident to the consideration of this issue, it must be determined whether the findings of the commission, based on facts herein, are conclusive. The court has dealt with this problem on innumerable occasions. The applicable rules derived from the cases can be summarized from the following citations:

"The facts in the instant case are undisputed. In such a situation if but one inference can reasonably be drawn from such undisputed facts a question of law is presented and the finding of the commission to the contrary is not binding on the reviewing court; but, if more than one inference can reasonably be drawn, then the finding of the commission is conclusive. *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 538, 61 N. W. (2d) 862." *Van Roy v. Industrial Comm.* (1958), 5 Wis. 2d 416, 425, 92 N. W. 2d 818.

"Notwithstanding that in a workmen's compensation case the facts may be undisputed, nevertheless questions of fact for determination may arise if different inferences can reasonably be drawn from the evidentiary facts. As said in *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 56 N. W. 2d 525:

" 'However, when facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one of such permissible inferences by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact and not a conclusion of law. *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 231, 52 N. W. (2d) 401; *Ebner v. Industrial Comm.* (1948), 252 Wis. 199, 201, 31 N. W. (2d) 172; *Green Valley Co-op. Dairy Co. v. Industrial Comm.* (1947), 250 Wis. 502, 505, 506, 27 N. W. (2d) 454.' " *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. 2d 261, 264, 265, 83 N. W. 2d 714.

In reviewing the evidence then, the question is whether the credible evidence or reasonable inferences therefrom support the commission's findings, in which case they are conclusive, or whether they are so manifestly incorrect that the circuit court was required to overturn them as a matter of law, or whether the facts are undisputed and no

conflicting inferences can be drawn therefrom so that the issue can be resolved as a matter of law.

This court has generally adopted a liberal construction of the workmen's compensation statutes. *Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis. 2d 579, 131 N. W. 2d 293; *Western Condensing Co. v. Industrial Comm.* (1952), 262 Wis. 458, 55 N. W. 2d 363; *Severson v. Industrial Comm.* (1936), 221 Wis. 169, 266 N. W. 2d 235.

The particular provision under consideration "... was enacted by the legislature to remedy an evil brought to its attention by cases such as *Gibbs Steel Co. v. Industrial Comm.* (1943), 243 Wis. 375, 10 N. W. 2d 130, and *Creamery Package Mfg. Co. v. Industrial Comm.* (1933), 211 Wis. 326, 248 N. W. 140, where injuries sustained while taking a bath and illness contracted by traveling salesmen whose work required them to live away from home most of the time, were held not to be covered by the act." *Simons v. Industrial Comm.* (1952), 262 Wis. 454, 457, 55 N. W. 2d 358.

In *Hansen v. Industrial Comm.* (1951), 258 Wis. 623, 626, 46 N. W. 2d 754, the purpose of the provision under consideration was stated thusly:

"The complexities of daily existence undoubtedly prompted the legislation, which plainly is calculated to be an effort to overcome ambiguities and uncertainties likely to arise from words used and from circumstances which prove nothing but are liable to create confusion between the variation of actions which arise between the cessation of positive acts of salesmanship and the acts during the rather passive or indifferent interval between then and the resumption of efforts the following day."

And, in *Waunakee Canning Corp. v. Industrial Comm.* (1955), 268 Wis. 518, 526, 68 N. W. 2d 25, the court said:

"It is considered that the language used in the compensation act should be as liberally construed to effectuate

the beneficient purposes intended, as can reasonably be done. Construction, where construction is permissible, which will give to the law its fullest reasonable scope, is thought to be what is required to carry out the legislative purpose. *State ex rel. Milwaukee v. Circuit Court* (1916), 163 Wis. 445, 158 N. W. 92. Actually, the compensation act is a substitute for the common law and is not merely supplemental thereto. The theories upon which the common law developed are not always helpful in determining the intent of the legislature in passing on the act. As stated by Horovitz, Workmen's Compensation (1944), p. 7:

" 'Unquestionably, compensation laws were enacted as a humanitarian measure, to create a new type of liability,—liability without fault,—to make the industry that was responsible for the injury bear a major part of the burdens resulting therefrom. It was a revolt from the old common law and the creation of a complete substitute therefor, and not a mere improvement therein. It meant to make liability dependent on a relationship to the job, in a liberal, humane fashion, with litigation reduced to a minimum. It meant to cut out narrow common-law methods of denying awards.' "

However, neither liberal construction applied with reason, nor the stated purposes of the legislation require the construction urged by the respondent. Rather, the most logical and rational approach in view of the purposes for which the statute was enacted was clearly promulgated in *Hansen v. Industrial Comm., supra,* pages 626, 627. In referring to the statutory words "acts reasonably necessary for living," the court set forth the following guidelines:

"The provisions of the statute just referred to keep the salesman within the declared scope of employment while doing the usual, legitimate things incidental to daily existence. During the period of being at ease, upon leaving his last customer, he is not required to seek immediate seclusion in a hotel and remain away from human beings at the risk of being charged with deviating from his employment. Nor is he required to eat his evening meal at

the restaurant nearest to the spot where he takes leave of his last customer on a particular day.

"The statute is so framed as to prevent any finding of deviation unless some meaningful manifestation of an intention on the salesman's part to engage voluntarily 'in a deviation for a private or personal purpose' is shown to exist. *Dining and spending the evening according to a custom ordinarily considered as usual and proper is not a deviation which takes the salesman out of the character of his employment.* It cannot be held that evidence exists of deviation if it does no more than show the salesman engaged in proper and customary conduct while living away from home." (Emphasis supplied.)

That Neese's purpose in going to Minneapolis was "private and personal" is beyond dispute. Driving 30 to 32 miles for the sole purpose of eating at a particular restaurant could in no way be in the interests of his employer. The question that remains is whether Neese's actions can be considered usual and proper customary conduct while living away from home.

In choosing a place to eat, what is the proper and usual custom is entirely dependent on all the facts and circumstances involved.

In its memorandum opinion, the circuit court stated:

"The nature of applicant's job responsibilities, his qualifications, the salary paid him and the freedom and discretion given him in carrying out these responsibilities must all be considered in determining whether or not there was a deviation at the time and place in question. Applicant's position required an educated, responsible person who was able to meet with physicians and hospital administrators as a professional equal. He received a substantial salary plus a liberal living allowance. Thus it was only natural to expect that applicant would have personal preferences, tastes and habits commensurate with his employment status, i.e., similar to those of physicians, lawyers, judges and educators. Moreover, his job required him to be on the road away from home for as much as a week at a time. It required him to travel to remote and thinly populated areas of the state where accommodations for both food and lodging were not al-

ways satisfactory. He was not obligated to eat at the closest restaurant to where he was staying. In fact, his choice of a dining place was left pretty much to his own judgment."

From the record these conclusions are undoubtedly correct. However, the nature of the person's preferences and the status of his job are not the only circumstances to consider. If Neese had been in an area where accommodations for food and lodging were not satisfactory, it may have been clearly permissible for him to travel 30 miles, 40 miles or even more, depending on circumstances, to find a reasonable place to eat. Nor should he be restricted to a particular restaurant in a given area but should have a reasonable choice in his selection.

Such, however, are not the circumstances presented. There is ample testimony in the record showing there were many good or excellent restaurants within a much shorter distance than Minneapolis. Between Amery and Hudson there were places of average quality or better. Right on and visible from the highway Neese took there were excellent places. Had Neese gone from Houlton toward Hudson he could have eaten at any of several good places either between Houlton and Hudson or in Hudson and the surrounding area. Had he stopped at Stillwater just beyond the St. Croix river he could have eaten at Lowell Inn, a renowned restaurant. The map introduced as an exhibit reveals he went right past the entire city of St. Paul to get to Minneapolis.

There is evidence that Neese had frequently traveled out of his way to eat on previous occasions without objection from his employer. However, according to Neese's testimony, these side trips were of a much shorter distance than the one in question, often taken because he was in a rural area where there was not a good place to eat, and several times involved entertaining persons in connection with his employment.

Neese's supervisor, Mr. Thayer, testified that Neese was not specifically instructed where to eat, and that it was left fairly much to Neese's discretion, except that employees were requested to eat and live within reasonable bounds, keeping in mind that the society was attempting to operate in an economical and sensible fashion. Thayer testified further that considering the other restaurants that were much closer, he did not feel that going to Minneapolis was justified.

Neese testified that he was not familiar with the restaurants in the area. However, on previous occasions when he was unfamiliar with an area he would frequently inquire about good places to eat. On this occasion no inquiry was made.

The record further shows that Neese did not report the side trip in the travel voucher covering the week in question. The voucher reported his entire mileage, but indicated that he went directly from Amery to Plum City, Wisconsin, no mention being made of Minneapolis. There being no sufficient explanation for the voucher failing to show the side trip, an inference that Neese himself considered the side trip a deviation at the time is reasonable. Further evidence shows no course of usual conduct or custom that would permit the side trip in question. Neese's conduct was not customary and proper under the circumstances presented.

We agree with the trial court that the purpose of the traveling salesmen statute was to give the traveling employee broader protection while working and living on the road. The *Hansen* and *Waunakee Cases, supra,* clearly support this position. However, a deviation from his route for acts of living must be reasonably necessary. What is reasonably necessary under the existing circumstances is a question of fact. We cannot conclude the commission was clearly wrong in finding Mr. Neese's deviation was not an act reasonably necessary for living

or incidental thereto under the facts of this case. In *Hansen, supra,* the employee had been entertaining a business guest at the time he was fatally injured.

The statute (sec. 102.03 (1) (f)) does not provide for workmen's compensation benefits when the trip is a deviation from the business of the employer for a private or personal purpose.[1] An exception to this exclusion is when the employee is engaged in an act "reasonably necessary for living or incidental thereto."

In this case it is undisputed that the trip to downtown Minneapolis was in no way connected with his employer's business. Neese's explanation for selecting "Charlie's" is that he had been there before and he wanted to relax. These facts are undisputed and lead to only one inference. It can be said as a matter of law that his deviation was for a private and personal purpose.

Neese would still be eligible for benefits if the side trip was an act reasonably necessary for living or incidental thereto. As set forth above, there was testimony that there were several good and adequate eating establishments within the course of travel for the benefit of the employer. Under this testimony the commission was required to draw an inference as to whether the deviation was an act reasonably necessary for living or incidental thereto.

The factual determination that at the time of the accident appellant was at a place where neither the duties of his employment nor acts of living called for his presence is a reasonable inference supported by the credible evidence and must be sustained by the court even though a contrary inference could be supported by the evidence.

*By the Court.*—Judgment reversed.

---

[1] A trip with a dual or concurrent purpose, one personal and private and the other for the benefit of the employer, can be compensable under the act. *See James v. Industrial Comm.* (1962), 18 Wis. 2d 239, 118 N. W. 2d 185.

WILKIE, J. (*concurring*). I concur in the result of this case but not in the reasoning of the majority. The commission found, as a fact, that there was a deviation for a private and personal purpose. This is a finding of fact which is reasonably supported by the credible evidence or reasonable inferences drawn therefrom.

I disagree with the majority's statement "It can be said as a matter of law that his deviation was for a private and personal purpose." The commission could have found that Neese's authorization to select his own eating places was so broad that this particular trip was not a deviation. It did not so find and I conclude we are bound by the finding made by the commission.

I am authorized to state that Mr. Chief Justice CURRIE and Mr. Justice HEFFERNAN join in this opinion.