SAUERWEIN, and another, Appellants, v. DEPARTMENT OF INDUSTRY & HUMAN RELATIONS, and others, Respondents.

*No. 75–764.   Argued January 3, 1978.—*
*Decided February 7, 1978.*
(Also reported in 262 N.W.2d 126.)

For the appellants there was a brief by *C. M. Bye* and *Gaylord, Bye and Rodli, S. C.* and oral argument by *C. M. Bye* of River Falls.

For respondent Wisconsin Telephone Company there was a brief and oral argument by *Fred D. Huber, Jr.,* of Milwaukee.

For respondent Department of Industry, Labor and Human Relations, the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.  This is an appeal from a circuit court judgment confirming a worker's compensation order and findings of the defendant, Department of Industry, Labor and Human Relations (hereafter D.I.L.H.R.). The order denied the worker's compensation claim of Kenneth R. Sauerwein (hereafter applicant), an employee of the Wisconsin Telephone Company (hereafter Wisconsin company).

The injury occurred at a motel swimming pool in Houston, Texas while the applicant was on an employee loan program to the Southwestern Bell Telephone Company. In denying claimant's application, D.I.L.H.R. found that the claimant's employment in Texas did not require him to travel, that claimant's accident did not arise out of his employment for the company and that at the time of his injury the applicant was not performing services incidental to his employment for the company. The applicant contends that at the time of the injury he was performing services incidental to his employment and that at the time of the injury he was a traveling employee.

The issues in this appeal are as follows:

1. What standard of review will this court apply to the D.I.L.H.R. findings?

2. Did the applicant's employment with the Wisconsin Company, while in Houston, "require him to travel" within the meaning of sec. 102.03(1)(f), Stats. (1975)?

3. If the applicant was not on travel status while in Houston, was he pursuant to sec. 102.03(1)(c), Stats. (1973) performing a service growing out of or incidental to his employment at the time of his injury?

4. Was the applicant within the scope of his employment at the time of injury because, (a) he was engaged in an activity that served a dual purpose, one that benefitted both himself and his employer or; (b) because he was ministering to his personal comfort within the scope of his employment or; (c) because he was performing a special purpose or mission for the Wisconsin company?

The facts of this case were stipulated to by the parties. On February 2, 1974 the applicant arrived in Houston, Texas, pursuant to an employee loan program between the Wisconsin company and Southwestern Bell. The applicant's anticipated length of transfer was five to six months. He remained on the payroll of the Wisconsin company, but was paid at the Houston rate. The Wisconsin company was reimbursed by Southwestern Bell.

The applicant was given an expense allowance for food and housing by Southwestern Bell. After residing in a motel for approximately one month the applicant rented a furnished apartment in Houston. The applicant purchased an automobile while in Houston. The automobile was titled in his name and registered in Texas.

While in Houston the applicant did his regular telephone installation and maintenance work during regular working hours which varied somewhat because of overtime. Following regular working hours he was not on call and there were no restrictions on his activities during other than working hours.

The applicant was allowed one trip home, or one visitor from home per month, at company expense. The applicant returned home once and his wife visited Houston twice during his employment in Houston.

On May 13, 1974, the applicant worked for Southwestern Bell Telephone from 7:30 a.m. to 4:30 p.m. Shortly thereafter he arrived at the swimming pool of

the Holiday Inn, 2391 S. Wayside in Houston. From his arrival until 8:00 p.m., the applicant swam, drank beer and socialized with his friends. At approximately 8:00 p.m., the applicant severed his spinal cord while falling or diving into the motel pool. The applicant is a quadriplegic as a result of his injury.

D.I.L.H.R. also made the following findings:

". . . that the applicant's work while he was stationed in Houston, Texas, did not require him to travel; that this was his usual and customary work; that this work was performed on a regular daily work schedule; that this work did not create the hazard of travel; that the applicant's work for the (Wisconsin company) at the time of the injury did not place him in a zone of danger on May 13, 1974; that on May 13, 1974, the applicant did not sustain an injury caused by an accident arising out of the applicant's employment by the (Wisconsin company); that at the time of the injury, the applicant was not performing services incidental to his employment by the (Wisconsin company)."

Based on these findings the D.I.L.H.R. hearing examiner ordered the worker's compensation application denied on July 18, 1975. D.I.L.H.R. affirmed the order of the hearing examiner September 18, 1975.

The applicant appeals from a March 26, 1976 judgment of the Dane County Circuit Court confirming the D.I.L.H.R. findings and order.

*Standard Of Review Of D.I.L.H.R. Findings.*

■

Findings of fact made by D.I.L.H.R. will not be overturned on review if they are supported by any credible evidence. *R. T. Madden, Inc. v. I.L.H.R. Dept.,* 43 Wis.2d 528, 547–548, 169 N.W.2d 73 (1969).

In this case D.I.L.H.R. found that the applicant's work did not require him to travel and that the applicant's injury did not arise out of, nor was it incidental to his

employment with the Wisconsin company. These findings use nearly the exact words of sec. 102.03 (1) (c) & (f), Stats. 1975. Those sections provide as follows:

"Sec. 102.03. *Conditions Of Liability.* (1) . . . (c) Where, at the time of the injury, the *employe is performing service growing out of and incidental to his employment.* Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; so shall any employe going between an employer's designated parking lot and the employer's work premises while on a direct route and in the ordinary and usual way; . . ." (Emphasis supplied.)

"*. . .*

"(f) . . . Every employe *whose employment requires him to travel* shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment." (Emphasis supplied.)

In other cases where findings were made using the terms of the statute, this court has stated that,

" 'The facts in the instant case are undisputed. In such a situation if but one inference can reasonably be drawn from such undisputed facts a question of law is presented and the finding of the commission to the contrary is not binding on the reviewing court; but, if more than one inference can reasonably be drawn, then the finding of the commission is conclusive. *Schmidkofer v. Industrial Comm.* (1953), 265 Wis. 535, 538, 61 N.W.2d 862.' *Van Roy v. Industrial Comm.* (1958), 5 Wis.2d 416, 425, 92 N.W.2d 818.

" 'Notwithstanding that in a workmen's compensation case, the facts may be undisputed, nevertheless questions of fact for determination may arise if different inferences can reasonably be drawn from the evidentiary

facts. As said in *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 56 N.W.2d 525:

" ' "However, when facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one of such permissible inferences by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact, and not a conclusion of law. *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 231, 52 N.W.2d 401; . . ." ' " *Neese v. State Medical Society,* 36 Wis.2d 497, 503, 153 N.W.2d 552 (1967).[1]

*Neese, supra,* involved D.I.L.H.R. findings of fact that were made in terms a statute.[2] According to *Neese, supra,* where such findings are based on undisputed facts and reviewed by this court they are treated as ultimate factual questions. These questions are often mixed questions of fact and law; the application of undisputed facts to the terms of a statute. If more than one reasonable inference can be drawn from undisputed facts, the drawing of that inference is still a finding of fact and conclusive on review. A question of law is presented when only a single inference can be drawn from the facts. The inferences referred to are not always factual inferences in the normal sense, but rather factual conclusions stated in terms of the statute.

### Did The Applicant's Employment Require Him To Travel?

In both *Lager v. I.L.H.R. Dept.,* 50 Wis.2d 651, 658, 185 N.W.2d 300 (1971) and *Tyrrell v. Industrial Comm.,*

---

[1] *Accord, Christnacht v. I.L.H.R. Dept.,* 68 Wis.2d 445, 451, 228 N.W.2d 690 (1975).

[2] In *Neese* at 36 Wis.2d 502 D.I.L.H.R. found that ". . . the applicant was engaged in a deviation for a private and personal purpose at the time of the accident" using the terms of sec. 102.03 (1) (f), Stats. (1975), *supra.*

27 Wis.2d 219, 226, 227, 133 N.W.2d 810 (1965) there were questions of whether the applicants were on travel status, under sec. 102.03 (1) (f), Stats. This court analyzed those questions as factual determinations that would be sustained if the D.I.L.H.R. findings were based on credible evidence or reasonable inferences.

In this case D.I.L.H.R. found that the applicant's employment, while in Houston, did not require him to travel. This was a finding of ultimate fact based on inferences from the evidentiary stipulation of the parties. D.I.L.H.R.'s finding was based in inferences from the facts that the applicant anticipated staying in Houston five to six months, that he had already stayed there for nearly three and one-half months, that he had rented a furnished apartment, that he bought a car registered in Texas, that he worked regular hours and that in the course of his employment he was not required to travel outside of the Houston metropolitan area. D.I.L.H.R.'s finding that the applicant was not required to travel was a finding of ultimate fact supported by reasonable inferences from the stipulation of the parties. This court will not disturb that finding.

The applicant contends that the D.I.L.H.R. findings are not conclusive and that the question of travel status under the statute is a question of law because the facts are undisputed. This argument would only be correct if the only possible inference from the facts was that the applicant's employment while in Houston required him to travel. Other inferences could be drawn from these undisputed facts and a question of law is not presented.[3]

---

[3] In reaching this decision we note that the inference drawn here is not a factual inference like the inference of approximate speed that is drawn from the length of an automobile skid mark. Here the drawing of the inference is similar to reaching a factual conclusion. That conclusion is factual even though stated in the terms of the statute.

We do not hold in this case that all people on employee loan programs are not traveling within the meaning of sec. 102.03 (1) (f), Stats. We only hold that D.I.L.H.R.'s finding that this particular applicant's employment did not require him to travel was based on reasonable inferences from the facts and will not be disturbed.[4]

The applicant contends that even if his employment did not require him to travel, he should be covered by worker's compensation under sec. 102.03 (1) (c), Stats. (1975). That section provides for coverage ". . . where at the time of injury the employee is performing services growing out of and incidental to his employment." D.I.L.H.R. found that the applicant was not performing services growing out of or incidental to his employment at the time of his injury. This finding will not be overturned on review if there were reasonable inferences or credible evidence to support the finding. *Hilbert v. I.L.H.R. Department,* 40 Wis.2d 598, 602, 162 N.W.2d 596 (1968).

There were reasonable inferences and credible evidence to support D.I.L.H.R.'s finding. The applicant was drinking, swimming and socializing at the time of his injury. He was not doing anything related to his employment.

*Dual Purpose, Special Mission, Or Personal Comfort.*

The applicant claims worker's compensation coverage under a number of other theories, all of which are inapplicable to the facts of this case. First, the applicant contends that at the time of his injury he was serving a dual purpose, benefitting both himself and his employer.

[4] Because we have determined that the applicant's employment did not require him to travel within the meaning of sec. 102.03 (1)(f), Stats., we need not decide whether he was engaged in a personal deviation at the time of his injury within the meaning of that same statute.

In *Barragar v. Industrial Comm.*, 205 Wis. 550, 238 N.W. 368 (1931), this court endorsed the following explanation of the dual purpose doctrine:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk." *Barragar* at 205 Wis. 554, 555, quoting *Matters of Marks v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929).

In the same case this court also stated that,

"In case it is the employer's trip and there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment during such detour." *Barragar* at 205 Wis. 553.

Assuming *arguendo* that the applicant's trip comes within the dual purpose doctrine, that doctrine does not mean that an employee will be covered by worker's compensation during the entire dual purpose trip. The employee is not covered while pursuing purely personal objectives. At the time of this applicant's injury he was pursuing personal objectives, swimming and socializing with his friends. The applicant is not entitled to worker's compensation based on the dual purpose doctrine.

The case of *Olson v. Industrial Comm.*, 273 Wis. 272, 77 N.W.2d 410 (1956) does not call for a contrary result. In that case, the applicant drove his employer's truck

from Blair, Wisconsin to Claremont, Minnesota to pick up a load of shelled corn. After the corn was loaded, the applicant spent two hours drinking beer, purchased at a liquor store, and then got into a fight with another man, named Marsolic. Both men were arrested, but Marsolic resisted arrest. While the police officer was putting Marsolic in jail, the applicant got in his truck and drove away, toward Blair. The applicant's truck overturned fourteen miles away, and he was seriously injured. He was allowed worker's compensation benefits.

In *Olson, supra,* this court reasoned that the applicant deviated from his trip by stopping at the liquor store, but returned to the purpose by starting the return journey to Blair. The applicant in *Olson* would not have been entitled to benefits if he had been injured while pursuing personal objectives and the same result must follow here.

Next, the applicant contends that he was covered by worker's compensation because he was ministering to his personal comfort at the time of his injury.

"Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, . . . the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." *American Motors Corp. v. Industrial Comm.,* 1 Wis.2d 261, 265, 83 N.W.2d 714 (1957).

The personal comfort doctrine has been applied in many work related settings.

"The compensation act covers not only the particular work that the employee is engaged to perform, but it covers the employee while he is engaged in the necessary incidents thereto. Compensation has been allowed where an employee was getting a drink *(Vennen v. New Dells L. Co.,* 161 Wis. 370, 154 N.W. 640; *Widell Co. v. Indus-*

*trial Comm.*, 180 Wis. 179, 192 N.W. 449) ; eating lunch on the premises *(Milwaukee Western F. Co. v. Industrial Comm.*, 159 Wis. 635, 150 N.W. 998; *Racine Rubber Co. v. Industrial Comm.*, 165 Wis. 600, 162 N.W. 664) ; warming himself *(Northwestern Iron Co. v. Industrial Comm.*, 160 Wis. 633, 152 N.W. 416) ; sleeping in place provided *(Holt L. Co. v. Industrial Comm.*, 168 Wis. 381, 170 N.W. 366; *John H. Kaiser L. Co. v. Industrial Comm.*, 181 Wis. 513, 195 N.W. 329) ; visiting toilet *(Milwaukee Western F. Co. v. Industrial Comm.*, 159 Wis. 635, 150 N.W. 998) ; going for pay *(Hackley-Phelps-Bonnell Co. v. Industrial Comm.*, 165 Wis. 586, 162 N.W. 921) ; riding on conveyance provided by master *(Huckley-Phelps-Bennell Co. v. Industrial Comm.*, 165 Wis. 586, 162 N.W. 921; *Rock County v. Industrial Comm.*, 185 Wis. 134, 200 N.W. 657) ; while going from place to place on a city street *(Schroeder & Daly Co. v. Industrial Comm.*, 169 Wis. 567, 173 N.W. 328; *U. S. Cas. Co. v. Superior H. Co.*, 175 Wis. 162, 184 N.W. 694) ; making toolbox for own tools *(Kimberly-Clark Co. v. Industrial Comm.*, 187 Wis. 53, 203 N.W. 737) ; millwright extinguishing fire *(Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 174 N.W. 899).

"Other cases in which it was held that the 'personal comfort' doctrine applied are *Vilter Mfg. Co. v. Industrial Comm.* (1927), 192 Wis. 362, 366, 212 N.W. 641 (repairman eating ice cream in an isolation hospital and contracting smallpox) ; *Wisconsin Mut. L. Co. v. Industrial Comm.* (1930), 202 Wis. 428, 429, 232 N.W. 885 (employee sleeping near truck to which he had been assigned) ; *Yawkey-Bissell Lumber Co. v. Industrial Comm.* (1934), 215 Wis. 99, 102, 103, 253 N.W. 793 (self-medication in a lumber camp) ; *Karlslyst v. Industrial Comm.* (1943), 243 Wis. 612, 614, 11 N.W.2d 179 (urinating while standing on running board of moving truck)." *American Motors,* at 1 Wis.2d 266, 267.

The cases cited demonstrate, and the applicant admits that in previous cases the personal comfort doctrine has been limited to injuries occurring on the employer's premises or relating to the employe's work. In this case, the applicant was ministering to his personal comfort at

the time of his injury, but his activities were unrelated to his work.

The applicant cites *Cavalcante v. Lockheed Electronics Co.*, 85 N.J. Super. 320, 204 A.2d 621 (1964) (affirmed 90 N.J. Super. 243, 217 A.2d 140 (1966)) to show that a traveling employee who is away from home at the direction of his employer is covered by the personal comfort doctrine. In *Cavalcante*, the New Jersey court never considered the personal comfort doctrine. The case was analyzed as an example of a traveling employee and in New Jersey (just as in Wisconsin under sec. 102.03(1) (f), Stats.) traveling employees are given broader worker compensation coverage.

In this case broader worker compensation would have been supplied by sec. 102.03(1) (f), Stats. That statute provides that, ". . . Acts reasonably necessary for living or incidental thereto shall not be regarded as (personal or private) deviation(s)." Under this language, a traveling employee is already covered by a statutory personal comfort doctrine in Wisconsin. Therefore, the traveling employee rationale used by the New Jersey court in *Cavalcante* is inapplicable in Wisconsin. If this applicant was to receive special worker compensation coverage, that coverage must be found in sec. 102.03(1) (f), Stats. What has already been stated above concerning the applicant's traveling status demonstrates that the applicant is not entitled to recover under sec. 102.03(1) (f), Stats.

Lastly, the applicant contends that he should be covered by worker's compensation because he was in Texas performing a "special mission" for the Wisconsin company. The applicant contends that under this special mission doctrine if an employee performs a special service for his employer, particularly a service causing inconvenience or requiring extra time and that employee

receives extra compensation for his efforts, then the employer impliedly agrees to extend the employment relationship to cover the entire mission.

In support of the existence of a "special mission doctrine" in Wisconsin, the applicant cites *Selmer Co. v. Industrial Comm.*, 264 Wis. 295, 58 N.W.2d 628 (1953) and *Krause v. Western Cas. & Sur. Co.*, 3 Wis.2d 61, 87 N.W.2d 875 (1958). These cases hold that an employee is entitled to recover for injuries incurred while being transported to or from work at the employer's expense. These cases do not support a special mission doctrine.

*By the Court.*—Judgment affirmed.