PEDERSON AND VOECHTING, Trustees, and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*April 1—June 11, 1930.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and *F. C. Seibold,* assistant attorneys general, and oral argument by *Mr. Seibold.*

For the respondents the cause was submitted on the brief of *Brown, Pradt & Genrich* of Wausau.

OWEN, J.  John Kromrey had worked for Niebuhr & Son for about fifteen years, handling produce in a warehouse. On August 18, 1928, the business was in the hands of Pederson and Voechting as trustees.  On the afternoon of that day the trustees advised Kromrey that his services would not be needed thereafter.  He quit work at six o'clock.  In the evening, in response to a telephone call, he went to Pederson's office, which was independent of and some distance from the building where Kromrey had worked.  He gave Pederson the keys.  He was not paid at the time, as Voechting, who was required to join with Pederson in signing checks, was not present.  The matter of paying Kromrey his wages was left until Monday morning.  On Monday forenoon Pederson saw Kromrey going by the office and called him in. Kromrey had not turned in one certain sales slip on some grain that he had sold and, at the request of Pederson, went back to his home, obtained it, and turned it in.  At that time, ten or eleven o'clock Monday morning, Kromrey was paid. There was then some conversation between Kromrey and Pederson about Kromrey getting his jacket and tools from the building, but Kromrey did not ask Pederson to open the building.  Knowing that the warehouse was open in the afternoon, Kromrey went there for the purpose of removing his overalls, jacket, wrench, and saw, which he had used in his work there.  While going downstairs to the basement where the articles were, he slipped, breaking a bone in his foot.  The question is whether, under these circumstances,

the relation of employer and employee existed between Kromrey and his former employers. The Industrial Commission held that it did, expressing the view that after termination of actual work an employee has a reasonable time within which to remove from the premises upon which he has been employed, personal belongings, tools, or equipment, which have been used by him in connection with his work.

We know of no general rule of law to the effect that the relation of employer and employee thus continues, nor do we know of any legal principle upon which such a conclusion may rest. Upon general principles, the relation terminates when the employee quits work or upon his discharge by the employer. If Kromrey was under the protection of the compensation act when he returned to the warehouse Monday afternoon for the purpose of securing his clothes and tools, it was because of the provisions of that act. The only provision thereof which would seem to have a bearing upon the question is that of sec. 102.07 (4), defining an employee to be "every person in the service of another under any contract of hire, express or implied, oral or written," and the provision of sec. 102.03 imposing upon employers liability for compensation for any personal injury accidentally sustained by an employee "where, at the time of the accident, the employee is performing service growing out of and incidental to his employment," and further providing that "every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment."

Under these and similar provisions, it seems to be conceded that an employee is under the protection of the compensation act after his discharge, provided he be injured upon the premises of his employer while remaining there for reasons connected with his former employment. 1 Honnold, Workmen's Compensation, p. 373; *Zygmuntowicz v. American S. & W. Co.* 240 Mass. 421, 134 N. E. 385.

It is likewise held that even after his discharge the employee is under the protection of the act while presenting himself at the usual place for the purpose of receiving his pay. Thus in the English case of *Riley v. William Holland & Sons,* 1 K. B. 1029, 4 Butterworth's W. C. C. 155, an employee discharged on Wednesday was held entitled to compensation for injuries sustained on Friday, the regular pay-day, at the place to which she was required to repair for the purpose of receiving her wages. This was on the theory that her contract of employment, either expressly or impliedly, required her to present herself at the appointed place on a specified day to receive her wages, and that in doing so she was but performing a service required of her by the conditions of her contract of employment. *Perry v. Beverage,* 121 Wash. 652, 209 Pac. 1102, 214 Pac. 146, and our own case of *Hackley-Phelps-Bonnell Co. v. Industrial Comm.* 165 Wis. 586, 162 N. W. 921, are of similar import.

For like reasons it is also held that where by express or implied provisions of the contract of employment the employee is required to return to the premises for the purpose of finishing up his work after his discharge, he is still under the protection of the act upon his return to the premises under such circumstances. Thus in *Mitchell v. Consolidated Coal Co.* 195 Iowa, 415, 192 N. W. 145, a miner who had quit his job was allowed compensation for an injury sustained by him while going down into the mine two or three days after his discharge. The decision in that case was based upon a custom existing in the mining industry in that district, to the effect that when a man is discharged it is his right and duty to square up the room and secure the place in which he is working. He was required to shoot off the corners and load out the coal he had down. When a man quit he was required to square up his work before he could draw his wages. His presence at the mine at the time of his injury was therefore attributable to the implied provision

of his contract of employment resulting from this custom in the industry in which he was working.

In a later case, *Johnson v. Albia,* 203 Iowa, 1171, 212 N. W. 419, compensation was denied to an engineer of a pumping plant of defendant's waterworks, where he quit work on the evening of November 15th, returned to the plant on November 16th for the purpose of getting his tools, and was injured while assisting his successor in starting one of the engines with which his successor was having trouble at the time he returned. The reasoning of the court was to the effect that under the Iowa statute, in order to entitle the injured person to compensation, there must be a contract of service, express or implied, at the time of the injury; that the contract of service terminated on the evening of November 15th, when he left the plant and turned his key over to his employer or to his successor; that he was never employed thereafter, and that he returned to the plant for a purely personal reason, namely, to secure his tools. In a dissenting opinion, EVANS, C. J., expresses the view that compensation should have been allowed, basing his contention, however, upon what he considered evidence of a custom in that locality which required a pumping engineer to render service to his successor in order to enable such successor to continue the work. His contention, however, plainly recognized the general principle that his presence at the pumping plant at the time of the injury must be attributable to the provisions of his contract of employment.

In the English case of *Molloy v. South Wales A. C. Co.* 4 Butterworth's W. C. C. 65, a colliery repairer was ordered to do certain work in the mine, which he declined to do, and left off work. He returned on the following Monday, and after some discussion with the manager, who had told him he had dismissed himself, obtained leave to go down into the mine to bring up his tools, which he left there. While down in the mine for that purpose he was injured by the fall of a

stone. The trial judge found that the manager, on dismissing Molloy, ordered him to fetch his tools, and that the accident arose out of and in the course of his employment. The case was not contested on the ground that compensation would not follow if the miner had been ordered by the foreman to fetch his tools, but it was contested solely upon the ground that this finding had no support in the evidence, and the court was urged to send the case back to enable the employer to show that the miner was not ordered to fetch his tools. But the response of the court, by Cozens-Hardy, M. R., simply was, "I am afraid we can do nothing for you," and the appeal was dismissed.

These cases give expression to the true rule. It is one thing to say that an employee may return to the premises after his discharge for the purpose of securing his personal belongings, and quite another thing to say that upon such return the relation of employer and employee obtains. If the relation does exist, it must appear that the errand of the employee was not merely for his personal convenience, but that his presence there was referable to his contract of employment and, in some measure, in obedience to his contractual obligation. Unless this appears, it cannot be said that he was injured while rendering service under a contract of hire or while going to and from his employment in the ordinary and usual way while on the premises of his employer, which are the only provisions of the workmen's compensation act which can be invoked to entitle the employee to compensation.

The award of the Industrial Commission was properly vacated by the trial court, and the judgment must be affirmed.

*By the Court.*—So ordered.

Stevens, J. (*dissenting*). For the reasons stated in the following opinion, prepared by Mr. Justice Crownhart

prior to his death, I respectfully dissent from the decision of the majority of the court.

There is no substantial dispute in the evidence. The commission found that applicant was notified on a Saturday afternoon that at the end of that day his services would no longer be needed. He continued to work until about six o'clock that day. That evening he turned over the keys to the building in which he had been employed. He was not paid until the following Monday morning. On Monday morning there was some conversation as to his desire to get his overalls and tools which he had used while working for the respondents, which were still at the place of his employment. It does not appear that any objection was raised to applicant's returning to the place where he had been employed for the purpose of obtaining his personal belongings. Applicant returned to the building in which he had been employed, the same afternoon to get his property. While there for that purpose, he fell on the stairway and sustained an injury to his foot. The commission found that the applicant, at the time of his injury, was performing service growing out of and incidental to his employment, within the meaning of that provision of the workmen's compensation law. The commission held that after termination of actual work an employee has a reasonable time within which to remove from the premises upon which he has been employed personal property, tools, or equipment which have been used by him in connection with his work.

Every compensation case cited in the opinion recognizes that notice of the discharge of an employee does not necessarily operate to terminate the status of employer and employee. The employer may take a reasonable time to settle up with his employee; he may require the employee to go to a distant place, according to custom, to get his pay, or, as in the instant case, to come back the next work day for his pay, or to bring in records in his possession. Such things are all

implied in the ordinary contract of hire. On the other hand, the employee has reciprocal rights. He has a reasonable time within which to settle with his employer. If he has tools or other things belonging to his employer, he has a reasonable time in which to turn them back to the employer. If he has tools or clothing left in his place of employment, he has a reasonable time within which to remove them. These are incidents implied in the contract of employment by force of a universal custom, of which we should take judicial knowledge.

Here, when the appellant surrendered the keys and the possession of his place of employment, it was closed for the night. He was not paid that day, and was required to return for his pay-check on Monday. There can be no question but that he acted within a reasonable time when he returned to get his property on Monday.

This case seems to indicate a tendency to turn from the liberal construction heretofore given the compensation act, back toward the hard-and-fast rules of the common-law tort action. "A study of the cases that have arisen under the workmen's compensation acts of the various states discloses that courts did not at first fully appreciate the fundamental change wrought by the adoption of these acts. In the earlier cases there was a tendency to construe these laws in the light of the rules that were applied in the old common-law tort action, which it was the purpose of these acts to replace, just as the common-law lawyers and judges, who interpreted our Code of 1856, read into it the technical rules of the old procedure which it was the purpose of the Code to supersede. American courts, however, soon came to appreciate that the workmen's compensation act is not a mere substitute for common-law liability for tort. This court was one of the first to declare that 'the liability of the employer under the compensation act rests upon an entirely different basis than that of his liability at common law,' *Anderson v. Miller*

*Scrap Iron Co.* 169 Wis. 106, 117, 170 N. W. 275, 279, 171 N. W. 935." *Val Blatz Brewing Co. v. Industrial Comm., ante,* p. 474, 230 N. W. 622.

The liberal construction given this act, in order to carry out its beneficent purpose, is illustrated by those cases in which this court held that the act covered a workman asleep in his bunk in the night time, *Holt L. Co. v. Industrial Comm.* 168 Wis. 381, 170 N. W. 366; *John H. Kaiser L. Co. v. Industrial Comm.* 181 Wis. 513, 195 N. W. 329; a teacher testing students for a basketball team, *Milwaukee v. Industrial Comm.* 160 Wis. 238, 151 N. W. 247; an employee who, after leaving his employment for the day, turned back to help extinguish a fire discovered on his employer's premises, *Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 174 N. W. 899; an employee who goes to the relief of a fellow employee, contrary to instructions, *Frint Motor Car Co. v. Industrial Comm.* 168 Wis. 436, 170 N. W. 285; one injured while going after a drink of water, *Widell Co. v. Industrial Comm.* 180 Wis. 179, 192 N. W. 449; one going to relieve a call of nature, *Milwaukee Western F. Co. v. Industrial Comm.* 159 Wis. 635, 150 N. W. 998; one eating his lunch according to custom on the premises of the employer, *Racine Rubber Co. v. Industrial Comm.* 165 Wis. 600, 162 N. W. 664; a highway employee returning to his work by a short-cut instead of using the usual way, *Monroe County v. Industrial Comm.* 184 Wis. 32, 198 N. W. 597; a highway employee being transported from work by his employer, *Rock County v. Industrial Comm.* 185 Wis. 134, 200 N. W. 657; an employee eating ice cream at the invitation of a janitor where the employee was temporarily employed, *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W. 641; an employee engaged in making a box for his tools used in his work, *Kimberly-Clark Co. v. Industrial Comm.* 187 Wis. 53, 203 N. W. 737. The status extends beyond the regular hours of employment and to premises

other than those where the employee was required to work. *Milwaukee v. Althoff,* 156 Wis. 68, 145 N. W. 238; *Milwaukee v. Industrial Comm.* 185 Wis. 311, 201 N. W. 240; L. R. A. 1916 A, 327.

The fundamental principle that was applied in all these cases is that an employee is entitled to compensation for any injury caused by a hazard that arises out of and is incidental to the status of employer and employee created by the contract of employment. The appellant was subjected to the hazard that caused his injury solely because of his status as an employee. It was the fact that he was an employee that led him to take his tools and working clothes to the premises of his employer. It was the fact that he was an employee that made it necessary for him to return to his employer's premises in order to secure his property. The removal of his working clothes and tools from the premises was just as essential to end his status as an employee as was the payment of his wages. In either case I believe it should be held that the status continues until he has been paid his wages and has had a reasonable opportunity to remove his personal belongings, taken to his employer's premises in order that he might there use them for the purpose of promoting the business of his employer.

In these respects this court has again and again announced the policy of the law to endow the workers with new rights, not available to them under the common law, and to give them broad and comprehensive relief against industrial accidents. In carrying out the policy of the law this court has from time to time given a most liberal interpretation to the compensation act in order that its humane intendments shall not fail. To hold that the status created by the employment is terminated before the employee has a reasonable opportunity after notice of discharge to get his personal belongings seems to me to be a reversal of the policy of the law as it has been interpreted heretofore by this court, and by other courts under similar acts. To so hold would seem to retrace

the progress which has been made in the liberal interpreta-
tion of the compensation act, by substituting a strict inter-
pretation of the rights created by the existence of the status
which is contrary to the custom and practice of employers
and employees.

I am authorized to say that Mr. Justice FRITZ joins in this
dissent.