Steven C. SECOR, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Interim
Healthcare and National Union Fire Insurance,
Defendants-Respondents.

Court of Appeals

*No. 99–0123. Submitted on briefs August 20, 1999.—Decided
December 29, 1999.*

## 2000 WI App 11

(Also reported in 606 N.W.2d 175.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel J. Kelley* of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C.* of Racine.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *Lowell E. Nass*, assistant attorney general, and *James E. Doyle*, attorney general. On behalf of the defendants-respondents Interim Healthcare and National Union Life Insurance, the cause was submitted on the brief of *James C. Ratzel* of *Ratzel & Mathie LLC* of Brookfield.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Steven C. Secor appeals from a judgment affirming a Labor and Industry Review Commission (LIRC) decision dismissing his claim for benefits under Wisconsin's Worker's Compensation Act (WCA), ch. 102, STATS. Secor asserts that his application for benefits was wrongly denied because he was injured while attempting to collect his paycheck from the office of his employer, Interim Healthcare. He contends that Wisconsin has adopted a blanket rule that collecting pay constitutes a service "growing out of and incidental to" one's employment pursuant to § 102.03(1)(c)1, STATS. In the present case, Secor's travel to pick up his pay was for his personal convenience and therefore he is not covered by the WCA. We acknowledge that the act of collecting pay is ordinarily a fundamental part of employment. However, where there is no evidence that the injured employee was engaged in an employer-mandated method for obtaining a paycheck or that the employee's action was

part of employer-employee custom for obtaining the check, but was an act of personal convenience on the employee's part, Wisconsin law does not permit recovery.

## BACKGROUND

¶ 2. The facts are largely undisputed. Secor was employed by Interim as a home health care aide providing health care services to clients in their homes. In October 1996, Secor had two primary clients. For his first client, he worked from 12:30 to 2:00 p.m.; for his second client, he started between 2:30 and 2:45 p.m. and worked until 5:30 or 5:45 p.m. Secor was reimbursed for his travel to and from the second client's house.

¶ 3. On October 17, 1996, after having completed his work at his first client's house, Secor was driving near Interim's office when he was involved in a serious automobile accident.

¶ 4. Secor subsequently filed an application for worker's compensation before the Worker's Compensation Division of the Department of Workforce Development. At a May 7, 1997 administrative hearing, Secor testified that he had been working for Interim since January 1995. He stated that during the summer and early fall of 1996, he would normally obtain his paycheck from Interim's office and would often drive to the office between his appointments to collect his paycheck. Although he testified that he had no recollection of what happened on Thursday, October 17, 1996, he did state that it was a payday. He asserted that the automobile accident occurred "[a] matter of feet" from Interim's office. Secor also stated that he would sometimes turn in his clients' "charting sheets" to Interim's office when he picked up his paycheck on

Thursdays, and that he would regularly pick up supplies from the office at the time he picked up his paycheck. He further testified that Interim's office was about fifteen minutes from his first appointment but in the opposite direction of his second appointment.

¶ 5. The administrative law judge (ALJ) ruled that Secor had not sustained a compensable injury arising out of or incidental to work for Interim. The ALJ concluded:

> Since there is no direct testimony that the applicant had any other purpose [than picking up his paycheck] for visiting [Interim's] office, it would be mere speculation on my part to hold that he had any other legitimate purpose for being there. Merely picking up a paycheck early, for your personal benefit, does not get you coverage under the Worker's Compensation Act.

¶ 6. Secor appealed the ALJ's order dismissing his application for worker's compensation. LIRC issued a decision and order affirming the findings and order of the ALJ. Secor obtained judicial review of LIRC's decision and order. The circuit court affirmed LIRC's decision. Secor appeals.

## DISCUSSION

¶ 7. At issue is Interim's liability under the WCA. The WCA provides that an employer may be liable for injuries to an employee where the employee sustains an injury, which is not intentionally self-inflicted, *see* § 102.03(1)(a) and (d); where the accident causing the injury arises out of the employee's employment, *see* § 102.03(1)(e); and "at the time of the injury, the employe is performing service growing out of and incidental to his or her employment," § 102.03(1)(c)1.

The parties agree that the only question to be addressed is whether Secor was performing services growing out of and incidental to his work for Interim.

## Standard of Review

¶ 8. On appeal, we review LIRC's, not the circuit court's, decision. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). Whether Secor was performing services growing out of and incidental to his employment is a mixed question of fact and law that requires the application of a statutory standard to findings of fact. *See Larson v. LIRC*, 184 Wis. 2d 378, 386, 516 N.W.2d 456, 459 (Ct. App. 1994). LIRC's factual findings must be upheld if there is any credible and substantial evidence in the record upon which a reasonable person could rely to make the same findings. *See* § 102.23(6), STATS.; *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983). Once the facts are established, the application of those facts to the statute is a question of law. *See Wisconsin Elec. Power Co. v. LIRC*, 226 Wis. 2d 778, 787, 595 N.W.2d 23, 27 (1999).

¶ 9. In certain situations we defer to an agency's interpretation or application of a statute. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). The parties disagree as to whether we should accord LIRC's interpretation great weight deference or no deference. The great weight standard is the highest degree of deference granted an administrative agency's conclusion of law or statutory interpretation; it is used when the agency's experience, technical competence and specialized knowledge assist the agency in its interpretation and application of the statute. *See Ide v.*

*LIRC*, 224 Wis. 2d 159, 166, 589 N.W.2d 363, 367 (1999). An agency's interpretation will be given great weight where

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or special- ized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uni- formity and consistency in the application of the statute.

*UFE*, 201 Wis. 2d at 284, 548 N.W.2d at 61 (quoting *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995)).

¶ 10. De novo review, on the other hand, is appro- priate only when the issue is one of first impression, or the agency's position on the issue has been so inconsis- tent as to provide no real guidance. *See id.* at 285, 548 N.W.2d at 62.[1]

¶ 11. Secor contends that the great weight stan- dard is inappropriate because the four criteria set forth in *UFE* are not satisfied. While he acknowledges that LIRC was charged by the legislature with the responsi- bility of administering the WCA, he claims that the other three criteria fail. We disagree.

¶ 12. Since at least the early part of this century, LIRC has had experience interpreting worker's com-

---

[1] Neither party seeks to invoke the middle level of agency review, due weight deference, which is applicable "when the agency has some experience in the area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 286, 548 N.W.2d 57, 62 (1996).

pensation laws and, in particular, the language contained in § 102.03(1)(c)1, Stats., concerning whether an employee was performing services related to his or her employment at the time of his or her injury. In *Hackley-Phelps-Bonnell Co. v. Industrial Commission*, 165 Wis. 586, 162 N.W. 921 (1917), the court reviewed the Industrial Commission's determination that an employee had been injured "while in the employ of the [employer] and while *performing service growing out of and incidental to his employment." Id.* at 587, 162 N.W. at 921 (emphasis added); *see Pederson & Voechting v. Industrial Comm'n,* 201 Wis. 599, 601, 231 N.W. 267, 268 (1930). *Hackley-Phelps-Bonnell,* like the present case, involved an employee who was injured while traveling to collect his paycheck. Because LIRC, for at least eighty years, has interpreted the provisions of § 102.03 relating to injuries while performing work growing out of and incidental to his or her employment, the second and third criteria are met. *See CBS, Inc. v. LIRC,* 219 Wis. 2d 564, 573, 579 N.W.2d 668, 672 (1998) (second and third factors met because LIRC had interpreted the traveling employee provision, § 102.03(1)(f), for fifty-three years).[2]

---

[2] Secor cites to a relatively recent LIRC decision, *Dodge v. Lakeland Tree Service,* No. 91–070969 (Nov. 2, 1994), in support of his contention that LIRC's interpretation of § 102.03(1), Stats., is not long standing. In *Dodge,* LIRC determined that an employer was not liable to a former employee who was injured while attempting to collect his paycheck two months after his employment terminated. LIRC stated that although the act of collecting a paycheck was ordinarily considered an employment activity, Dodge's two-month gap exceeded a "reasonable interval" to collect pay and therefore the employment relationship had ended. *See Dodge,* at 3.

¶ 13. As to the fourth criteria, LIRC's interpretation of § 102.03(1)(c)1, Stats., will promote greater uniformity and consistency in the future than would the judgments of various courts. *See CBS*, 219 Wis. 2d at 573, 579 N.W.2d at 672. Because the four *UFE* criteria are met, we grant LIRC's interpretation of § 102.03(1)(c)1 great weight deference.

¶ 14. Our conclusion is in accord with case law addressing similar worker's compensation statutes such as § 102.03(1)(c)2, Stats. This section provides that "[a]ny employe going to and from his or her employment in the ordinary and usual way, while on

Secor argues that because LIRC considered the issue of whether the act of collecting a paycheck constituted an employment activity as recently as 1994, LIRC's interpretation of the statute in the present case is not long standing. Secor's argument, however, ignores *Hackley-Phelps-Bonnell Co. v. Industrial Commission*, 165 Wis. 586, 162 N.W. 921 (1917), and other cases which reveal LIRC's lengthy experience interpreting § 102.03(1), Stats.

Secor also contends that LIRC's decision in *Dodge* finding that the act of collecting one's paycheck is an employment activity runs contrary to its decision in the present case determining that Secor's attempt at collecting his paycheck exceeded the scope of his employment. Secor asserts that collecting a paycheck is either an employment activity or a personal activity, but not both. Secor's reasoning is rather simplistic, however, because there is more involved in these cases than whether or not an employee is collecting a paycheck. In *Dodge*, the former employee was denied benefits because he was no longer considered an employee due to the extended time period between his termination and the date of injury. In the present case, LIRC dismissed Secor's claim because his travel to Interim's office to obtain his paycheck was for his personal convenience.

the premises of the employer . . . is performing service growing out of and incidental to employment." *Id.* In *Ide*, the court determined that LIRC's interpretation of § 102.03(1)(c)2 should be granted great weight deference because "LIRC has gained experience and expertise in determining when an employee is acting within the scope of his or her employment." *Ide*, 224 Wis. 2d at 166, 589 N.W.2d at 367.

¶ 15. The great weight deference standard requires that we uphold LIRC's interpretation of a statute unless it is unreasonable. *See id.* at 167, 589 N.W.2d at 367. An unreasonable interpretation of a statute by an agency is one that "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise . . . without rational basis." *Id.* (quoted source omitted).

### Analysis

¶ 16. At the outset, we note that the parties dispute whether LIRC found that Secor's purpose in traveling from his first client's home to Interim's office was to collect his pay. Secor contends that LIRC made an implicit finding of such a purpose. LIRC contends that no specific finding was made but that LIRC merely presumed for the sake of argument that Secor was traveling to Interim's office to pick up his pay. We agree with LIRC.

¶ 17. In its memorandum decision, LIRC made the following findings: (1) Interim did not require Secor to use his car in his employment and did not care how he got to his clients' residences; (2) Secor admitted that because he had no memory of the day of the accident he did not know where he was going or where he was coming from at the time of the accident; (3) Secor

believed he was on his way to pick up his paycheck because October 17, 1996, was a payday and in the past he had traveled to Interim's office at the same time to collect his paycheck; (4) Interim did not require its employees to pick up their paychecks because they are mailed to the employees; (5) Secor did not have any other legitimate business purpose for traveling to the office; and (6) apart from being paid a few dollars a day by the federal government for his travel to and from his second patient's home, there were no other facts to establish that Secor was a "traveling employee" for purposes of the WCA and that, at most, Secor was injured while making a personal deviation to pick up his paycheck which was not a normal route between his two clients. LIRC then concluded that "the evidence was sufficient to raise a legitimate doubt that [Secor] was performing services arising out of and in the course of his employment at the time of his injury on October 17, 1996. Therefore, the applicant's claim for benefits was appropriately dismissed."

¶ 18. Regarding Secor's purpose in traveling to Interim's office, we note that LIRC found that paychecks were routinely mailed to Interim's employees and that Secor was not required to pick up his paycheck. LIRC also determined that the ALJ had appropriately found that "there was no clear showing that [Secor] had any other business purpose while traveling to the office on October 17, 1996." We also consider the ALJ's decision, which LIRC expressly adopted as its own. The ALJ found "no clear business purpose for [Secor] driving to the [Interim] office." The ALJ further stated, "Since [Secor] was in the vicinity of [Interim's] office, on a payday, a presumption can be made that he had traveled to that location to pick up his paycheck."

¶ 19. We do not read LIRC's opinion as making any specific factual finding as to Secor's purpose in traveling to Interim's office at the time of the accident. We agree with LIRC that both LIRC and the ALJ merely *presumed* that Secor had a business purpose of collecting his paycheck. Based on this presumption, LIRC and the ALJ concluded that such a purpose, where not required or the custom of the employer, did not permit compensation under the WCA.

¶ 20. We now turn to Secor's substantive argument. Secor claims that Wisconsin law has established a blanket rule that an employee is performing services growing out of and incidental to employment while collecting pay. Secor relies on the *Hackley-Phelps-Bonnell* and *Pederson* decisions to support his position. We reject Secor's reading of the law and conclude that LIRC has a bright-line rule that injuries do not arise out of one's employment when one is collecting a paycheck as a matter of personal convenience.

¶ 21. In *Hackley-Phelps-Bonnell*, the court held that injuries sustained while picking up a paycheck were compensable where the "employee was acting within the scope of his [or her] employment as fixed by contract and custom of the parties." *Hackley-Phelps-Bonnell*, 165 Wis. at 591–92, 162 N.W. at 922–23. There, the employee's foreman instructed the employee that he had to travel to the logging headquarters to collect his paycheck and that he "could ride on the logging train, as he had done before and as he knew the custom was." *Id.* at 589, 162 N.W. at 922. The court noted that in collecting his pay, he was "fulfilling a duty imposed upon him by the employer and using the means of conveyance which the employer furnished his employees for such purpose." *Id.* The court further

stated that an employee "going in the usual manner for his pay to a place designated by the employer is performing a service within his employment." *Id.* at 590, 162 N.W. at 922.

¶ 22. *Pederson* involved a warehouse employee who, after being let go, later returned to collect his wages and after doing so was injured when he proceeded to remove his personal belongings from the employer's building. *See Pederson & Voechting*, 201 Wis. at 600, 231 N.W. at 268. The court determined that an employment relationship did not exist at the time of Pederson's injury because he had been discharged, thereby terminating the parties' contractual relationship. *See id.* at 601, 231 N.W. at 268. The court noted that an employee would be covered by the WCA if, after his or her discharge, the employee remained on the premises for reasons connected with his or her former employment, such as collecting one's pay. *See id.* at 601–02, 231 N.W. at 268.

> Thus in the English case of *Riley v. William Holland & Sons*, 1 K. B. 1029, 4 Butterworth's W. C. C. 155, an employee discharged on Wednesday was held entitled to compensation for injuries sustained on Friday, the regular pay-day, at the place to which she was *required* to repair for the purpose of receiving her wages. This was on the theory that her contract of employment, either expressly or impliedly, *required* her to present herself at the appointed place on a specified day to receive her wages, and that in doing so she was but performing a service *required* of her by the conditions of her contract of employment. . . . *Hackley-Phelps-Bonnell Co. v. Industrial Comm.* 165 Wis. 586, 162 N.W. 921, [is] of similar import.

*Pederson & Voechting*, 201 Wis. at 601, 231 N.W. at 268 (emphasis added). The court concluded by distinguishing actions pursued in furtherance of an employee's "personal convenience," such as Pederson's, from duties fulfilled pursuant to a contract requirement, such as the employee's in *Hackley-Phelps-Bonnell. See Pederson & Voechting*, 201 Wis. at 604, 231 N.W. at 269.

¶ 23. Contrary to Secor's argument, the *Hackley-Phelps-Bonnell* and *Pederson* decisions do not establish a bright-line rule that whenever an employee is in the process of collecting his or her paycheck and sustains an injury, the employer is liable. Instead, liability depends on the circumstances. In *Hackley-Phelps-Bonnell*, the employee's injuries were compensable because he was acting in accordance with the contract and established custom of the parties; the employee would be paid under the contract if he went to the location prescribed by the employer, and the custom, as established by the employer, was for the employee to ride the employer's train to the employer's headquarters. The *Pederson* court looked to whether the employee was injured while acting for his own convenience or while performing a service required by express or implied conditions of the employment contract.

¶ 24. Here, Interim neither requested nor required Secor to pick up his paycheck and there was no workplace custom to do so. Although Secor certainly had a right to be paid under his employment contract, the custom as established by Interim was to mail paychecks to employees. In traveling to Interim's office to collect his paycheck sooner than he would typically receive it by mail, Secor was acting for his personal convenience. Had Interim required its employees to

pick up their paychecks or established a custom in which all employees picked up their paychecks at Interim's office, Secor's injuries may have been compensable under the WCA.

¶ 25. While acknowledging Interim's practice of mailing paychecks to employees, Secor nonetheless argues that he followed his own custom of collecting his paycheck before it was mailed. He contends that there is "absolutely no evidence in the record" to show that he "did not act in accordance with workplace custom in the manner in which he attempted to collect his pay." However, what Secor did in the past does not define the workplace custom for employees at Interim. Rather, the custom here was established by Interim's policy of mailing checks to employees. As LIRC found, "Mr. Rumpeteris, the employer's clients services manager, testified that the employer mailed out the pay checks and that [Secor] was not required to pick up his pay check." While employees were permitted to pick up their checks early, Secor offers no evidence, apart from testimony about his own conduct, to support his suggestion that it was the custom of Interim's employees to collect their checks before they were mailed. We reject Secor's view that the action of one employee establishes a custom.

¶ 26. Secor next looks to treatises in support of his position that Wisconsin has created a blanket rule that collecting a paycheck is an employment activity. He cites to JOHN D. NEAL AND JOSEPH DANAS, JR., WORKER'S COMPENSATION HANDBOOK § 3.28 (4th ed. 1997), which summarizes *Hackley-Phelps-Bonnell* as standing for the proposition that an employee is "generally considered to be in the course of employment while collecting pay." We agree with this proposition of

law because, as the authors note, it is *generally* true that collecting pay falls within the scope of one's employment. However, as we have set forth, there are exceptions to this general principle and Secor's case stands as one.

¶ 27. Secor cites case law from other jurisdictions which he argues comes to the opposite conclusion as that of LIRC. Secor relies on *Gunthrop-Warren Printing Co. v. Industrial Commission*, 384 N.E.2d 1318 (Ill. 1979), in which the Illinois Supreme Court concluded that an employee-employer relationship extended to an employee who was discharged on a Friday and was fatally injured the following Wednesday when he attempted to collect his final paycheck from his employer's office. Much like the present case, the employer held paychecks for its employees on Wednesday and if an employee did not pick it up, the check was mailed to the employee's residence. However, unlike the instant case, the employee in *Gunthrop-Warren* "attempted to present himself at *the usual place* for payment on the next regular payday." *Id.* at 1321 (emphasis added). The "usual place" was established as the second floor of Gunthrop-Warren's building—"it was there that the employees received their payroll checks every Wednesday from . . . the general foreman, who had a desk right inside the door." *Id.* at 1319. Here, the only custom demonstrated was Interim's practice of mailing checks to its employees. As we indicated above, Secor's habit of personally picking up his check did not create a company custom or practice. *Gunthrop-Warren*, therefore, does not help Secor.[3]

_____

[3] Secor cites a number of other cases in support of his proposition that he was acting within the scope of his employment when he attempted to collect his paycheck. *See Oliver v. Faulkner Wood Co.*, 531 So. 2d 675 (Ala. Civ. App. 1988); *Argonaut*

¶ 28. Next, Secor argues that the dual purposes of the WCA support a finding that an employee is performing services growing out of and incidental to employment while collecting pay. Secor notes that "[w]orker's compensation is a legislatively enacted compromise designed to bring employers and employees together in a mutually beneficial scheme of guaranteeing benefits in the event of work-related injury and disease." *Nelson v. Rothering*, 174 Wis. 2d 296, 302, 496 N.W.2d 87, 90 (1993). While we agree that in some circumstances collecting pay is mutually beneficial to both the employer and the employee, here there is no indication that Secor's presumed practice of picking up his paycheck imparted any significant benefit to Interim. At most, Secor could save Interim the cost of mailing his paycheck, but such benefit hardly satisfies the dual-purpose doctrine. We are convinced that where the purpose of Secor's trip to Interim's office was to collect his paycheck for his personal convenience, such a purely personal objective is not covered under the dual-purpose doctrine. *See Sauerwein v.*

*Ins. Co. v. Industrial Accident Comm'n*, 34 Cal. Rptr. 206 (Cal. Ct. App. 1963); *Dunlap v. Clinton Valley Ctr.*, 425 N.W.2d 553 (Mich. Ct. App. 1988). None of these cases lends particular support to Secor's argument. In *Oliver*, an employee was injured after being directed by his employer to meet at a specific location to receive his pay. In *Argonaut*, an employee was fatally injured when he traveled to the usual place to collect his paycheck. In *Dunlap*, the court simply held that a claimant's injury "arises out of the course of his employment when he is at his place of employment to pick up his check and is injured"; however, the court did not address the customary practice for picking up paychecks and did not establish whether the injured employee collected her pay as a matter of personal convenience. *Dunlap*, 425 N.W.2d at 554.

*DILHR*, 82 Wis. 2d 294, 303, 262 N.W.2d 126, 131 (1978).

¶ 29. Finally, as an alternative argument, Secor contends that his accident is covered under § 102.03(1)(f), Stats., the "traveling employee" provision. Section 102.03(1)(f) provides:

> Every employe whose employment requires the employe to travel shall be deemed to be performing service growing out of and incidental to the employe's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employe's employment.

¶ 30. In addressing the applicability of para. (1)(f), LIRC concluded that "it appears that [Secor] at most was injured while making a personal deviation to pick up his pay check which was not on a direct or normal route between the two patients that he normally cared for on October 17, 1996." Assuming without deciding that Secor's employment with Interim as a home health care aide required him to travel as encompassed by para. (1)(f), we agree with LIRC that Secor is nonetheless precluded from compensation because his presumed excursion to collect his paycheck constituted "a deviation for a private or personal purpose." *Id.*

¶ 31. The traveling employee provision carries a "presumption that an employee traveling on business is performing services arising out of and incidental to his or her employment at all times until he or she returns." *Wisconsin Elec.*, 226 Wis. 2d at 788, 595

N.W.2d at 27. In rebutting this presumption, it must first be shown that the employee deviated from his or her business by pursuing a private or personal objective. *See id.* at 789, 595 N.W.2d at 28. Here, Secor contends that his purpose in traveling to Interim's office at the time of the accident was to collect his paycheck. However, collecting a paycheck from Interim's office constitutes a deviation because Secor was neither required nor requested to pick up his paycheck and because Interim had an established practice of mailing employees' paychecks. We therefore agree with LIRC and Interim that Secor's excursion to the office was for purely personal purposes.

¶ 32. Second, it must be demonstrated that "the deviation, although for a personal purpose, was not an act reasonably necessary for living or incidental thereto." *Id.* (quoted source omitted). Secor's travel to Interim's office was not reasonably necessary because Interim had an established practice of mailing paychecks. While we agree with Secor that collecting pay from an employer is a fundamental part of employment, we are not convinced that traveling to pick up a paycheck is necessary when the employer has an established method of distributing pay that does not require the employee to travel. Secor's claim under § 102.03(1)(f), STATS., therefore fails.

*By the Court.*—Judgment affirmed.