IN RE the ESTATE OF James J. FRY:
Janet L. FRY, Personal Representative, Plaintiff-
Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Piper Jaffray
Company, Inc. and Pacific Indemnity Company,
Defendants-Respondents.

Court of Appeals

*No. 00–0523. Submitted on briefs August 28, 2000.—Decided
October 31, 2000.*

2000 WI App 239

(Also reported in 620 N.W.2d 449.)

†Petition to review denied.

574

575

576

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general, of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The Estate of James J. Fry (estate) appeals from a judgment affirming a Labor and Industry Review Commission (LIRC) decision dismissing a claim for benefits under Wisconsin's Worker's Compensation Act (WCA), WIS. STAT. ch. 102.[1] The estate asserts that at the time Fry was killed in a traffic accident, he was performing services growing out of and incidental to his employment within the meaning of WIS. STAT. § 102.03(1)(c)1, and that the estate therefore is entitled to worker's compensation benefits. Specifically, the estate contends that when Fry left his workplace midday to drive to an appointment at a nearby hospital to seek treatment for his recurring kidney stone problem, he was ministering to his personal comfort and, thus, his actions were incidental to his employment pursuant to the "personal comfort doctrine." Because we conclude that under the stipulated facts of this case LIRC's legal conclusion that Fry's attempted visit to the hospital falls outside the personal comfort doctrine is reasonable, we affirm the circuit court's order and LIRC's decision.

## BACKGROUND

¶ 2. This case was submitted to the administrative law judge and LIRC on stipulated facts. Fry died on April 14, 1994, in a traffic accident. Fry, a stockbroker paid solely on commission, had arrived at his Piper Jaffray office at the usual time that morning, but left the office midday after informing office personnel that he had a scheduled appointment to have radiological testing for kidney stones at St. Mary's Hospital. Fry had a history of kidney stone problems and earlier that

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

day was experiencing kidney pain symptoms. Fry told the receptionist that he had an appointment later that afternoon and expected to return to the office after medical testing was completed. Although not explicitly stated in the stipulation of facts, it appears undisputed that Fry scheduled the appointment sometime that morning.

¶ 3. The parties agree that the most direct route from Fry's office to the hospital required Fry, who was driving his own vehicle, to cross Highway 172, proceed North on Highway 41, and exit at the Shawano Avenue exit.[2] At approximately 12:50 p.m., Fry was spotted by several motorists on the side of Highway 41, apparently trying to flag down traffic. He had parked his van, leaving the engine running. The Brown County Sheriff's Department concluded that Fry had been overcome by kidney stone pain, was unable to drive further, and removed himself from his vehicle in order to obtain assistance. Fry was killed when he stepped onto the road and was struck by a truck.

## STANDARD OF REVIEW

¶ 4. On appeal, we review LIRC's, not the circuit court's, decision. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). LIRC's factual findings must be upheld if there is any credible and substantial evidence in the record upon which a reasonable person could rely to make the same findings. *See* WIS. STAT. § 102.23(6); *Princess House,*

---

[2] Although Fry at times traveled for work in his own vehicle, the parties have stipulated that on the day of the accident he was not a "traveling employe" within the meaning of WIS. STAT. § 102.03(1)(f).

*Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983).

¶ 5. LIRC's interpretation of WIS. STAT. § 102.03(1)(c)1[3] and the personal comfort doctrine, or the application of the statute and the doctrine to stipulated facts, presents a question of law.[4] *See Secor v. LIRC*, 2000 WI App 11 ¶ 8, 232 Wis. 2d 519, 606 N.W.2d 175 (once the facts are established, the application of those facts to the statute is a question of law). We therefore apply one of three levels of deference to LIRC's legal conclusions about the interpretation and application of § 102.03(1)(c)1 and the personal comfort doctrine: "great weight," "due weight," or "de novo." *See*

---

[3] WISCONSIN STAT. § 102.03, "**Conditions of liability**," provides in pertinent part:

> **(1)** Liability under this chapter shall exist against an employer only where the following conditions concur:
> (a) Where the employe sustains an injury.
> (b) Where, at the time of the injury, both the employer and employe are subject to the provisions of this chapter.
> (c)1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his or her employment.

[4] In *Marmolejo v. DILHR*, 92 Wis. 2d 674, 683, 285 N.W.2d 650 (1979), our supreme court examined the application of the personal comfort doctrine and concluded "there was sufficient credible evidence in this case to support the department's findings of fact that at the time of the injury the appellant was not performing services growing out of or incidental to his employment." This language suggests the court considered the application of WIS. STAT. § 102.03(1)(c)1 and the personal comfort doctrine to the facts to be a question of fact. Even if this was the standard in 1979, our supreme court has subsequently made it clear that LIRC's application of WIS. STAT. § 102.03 to established facts is a question of law. *See Wisconsin Elec. Power Co. v. LIRC*, 226 Wis. 2d 778, 787, 595 N.W.2d 23 (1999).

*Bammert v. LIRC*, 2000 WI App 28, ¶ 4, 232 Wis. 2d 365, 606 N.W.2d 620. The parties disagree as to whether we should accord LIRC's legal conclusions great weight deference or no deference.

¶ 6. The great weight standard is the highest degree of deference granted an administrative agency's conclusion of law or statutory interpretation; it is used when the agency's experience, technical competence and specialized knowledge assist the agency in its interpretation and application of the statute. *See Ide v. LIRC*, 224 Wis. 2d 159, 166, 589 N.W.2d 363 (1999). An agency's interpretation will be given great weight where (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).

¶ 7. De novo review, on the other hand, is appropriate only when the issue is one of first impression, or the agency's position on the issue has been so inconsistent as to provide no real guidance.[5] *See id.* at 285.

[5] The estate contends that the de novo standard of review is appropriate in this case for both of those reasons. The estate also cites *Byers v. LIRC*, 208 Wis. 2d 388, 394, 561 N.W.2d 678 (1997), for the proposition that no deference should be given LIRC's legal conclusion "when this court is as competent as the administrative agency to decide the legal question involved." In *Byers*, the court examined whether WIS. STAT. § 102.03(2), the exclusive remedy provision of the WCA, bars a claim brought under the Wisconsin Fair Employment Act. *See id.* at 390–91.

Neither party seeks to invoke the remaining level of agency review, due weight deference, which is applicable "when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286.

¶ 8. We conclude that the great weight standard is appropriate in this case. In *Secor*, we examined WIS. STAT. § 102.03(1)(c)1 and the applicable standard of review. We concluded that LIRC's experience interpreting this statute satisfied the four-part test identified in *UFE. See Secor*, 2000 WI App at ¶¶ 12–13. Furthermore, we are not persuaded that in this partic-

---

The court recognized that in some cases the courts give deference to the interpretation of the administrative agency because of the agency's expertise in the area. *See id.* at 394. "But although LIRC has experience in resolving questions about the exclusive remedy provision of the [WCA], the courts also have significant experience with this subject matter. Therefore, we need not in this case defer to LIRC's expertise." *Id.* Supreme court cases before and after *Byers* continue to direct reviewing courts to employ one of three levels of deference when considering an administrative agency's interpretation of a statute: no weight, due weight, or great weight. *See e.g., Hagen v. LIRC*, 210 Wis. 2d 12, 18, 563 N.W.2d 454 (1997). *Byers* is distinguishable for several reasons. First, in *Byers*, LIRC, the employer and the employee all acknowledged that the court should decide the issue presented without deference to the commission's decision. *See id.* at 394. Second, the issue presented was one of first impression. Third, the issue presented involved the conflict of two statutes. *See id.* at 395. While our supreme court determined that the issue presented in *Byers* warranted de novo review, we are not convinced the same rationale is applicable in the instant case.

ular case the facts warrant application of the de novo or due weight standard. Accordingly, we will apply the great weight deference standard, which requires that we uphold LIRC's interpretation of a statute unless it is unreasonable. *See id.* at ¶ 15. An unreasonable interpretation of a statute is one that directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise without rational basis. *Id.*

## THE PERSONAL COMFORT DOCTRINE

¶ 9. Generally, an employee's exclusive remedy for a work-related injury lies under the WCA. *West Bend Mut. Ins. Co. v. Berger*, 192 Wis. 2d 743, 750, 531 N.W.2d 636 (Ct. App. 1995). An employer may only be held liable under the WCA for injuries that occur while an employee is "performing service growing out of and incidental to his or her employment." WIS. STAT. § 102.03(1)(c)1. In limited circumstances, an employee may be performing services growing out of and incidental to employment even when the employee is engaged in activities related to the employee's own personal comfort pursuant to the personal comfort doctrine. The personal comfort doctrine was developed

> to cover the situation where an employee is injured while taking a brief pause from his labors to minister to the various necessities of life. Although technically the employee is performing no services for his employer in the sense that his actions do not contribute directly to the employer's profits, compensation is justified on the rationale that the employer does receive indirect benefits in the form of better work from a happy and rested workman, and on the theory that such a minor deviation does not take the employee out of his employment.

*Marmolejo v. DILHR*, 92 Wis. 2d 674, 678, 285 N.W.2d 650 (1979) (quoting Comment, Workmen's Compensation: *The Personal Comfort Doctrine*, 1960 Wis. L. Rev. 91). Under the liberal construction given to WIS. STAT. ch. 102, an employee acts within the course of employment when he or she is otherwise within the time and space limits of employment, and briefly turns away from his or her other work to tend to matters necessary or convenient to his or her own personal health and comfort. *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 105, 559 N.W.2d 588 (1997).

¶ 10. Once an employee has entered into the course of his employment,

> the test to be applied in determining whether he has removed himself therefrom is that of deviation. In other words, has the employee engaged in some activity of his own which has no relation to his employer's business? An act which ministers to the employee's comfort while on the job is not such deviation because it is incidental to, and not wholly apart from, the employment.

*Van Roy v. Industrial Comm'n*, 5 Wis. 2d 416, 422, 92 N.W.2d 818 (1958). The personal comfort doctrine does not apply, and an employee is not within the course of employment, if the "extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or . . . the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." *Weiss*, 208 Wis. 2d at 106.

¶ 11. The personal comfort doctrine was first recognized in Wisconsin in *Milwaukee Western Fuel Co. v. Industrial Comm'n*, 159 Wis. 635, 150 N.W. 998 (1915)

(eating lunch on the premises), and has since been applied in many diverse fact situations.[6] *See*

[6] The injured employee was allowed to recover benefits under the WCA in the following cases, some of which explicitly cite the personal comfort doctrine and others which have subsequently been identified as personal comfort doctrine cases:

*Horvath v. Industrial Comm'n*, 26 Wis. 2d 253, 131 N.W.2d 876 (1965) (teacher driving home to change clothes to return for banquet at school); *Van Roy v. Industrial Comm'n*, 5 Wis. 2d 416, 92 N.W.2d 818 (1958) (driving in own car to restaurant for lunch); *Krause v. Western Cas. & Sur. Co.*, 3 Wis. 2d 61, 87 N.W.2d 875 (1958) (riding in employer's car to restaurant for coffee); *American Motors Corp. v. Industrial Comm'n*, 1 Wis. 2d 261, 83 N.W.2d 714 (1957) (resting on boxes in work area during noon hour); *Karlslyst v. Industrial Comm'n*, 243 Wis. 612, 11 N.W.2d 179 (1943) (urinating while standing on running board of moving truck); *Yawkey-Bissell Lumber Co. v. Industrial Comm'n*, 215 Wis. 99, 253 N.W. 793 (1934) (self-medication in a lumber camp); *Wisconsin Mut. Liab. Co. v. Industrial Comm'n*, 202 Wis. 428, 232 N.W. 885 (1930) (employee sleeping near truck to which he had been assigned); *Vilter Mfg. Co. v. Jahncke*, 192 Wis. 362, 212 N.W. 641 (1927) (repairman eating ice cream in an isolation hospital and contracting smallpox); *Kimberly-Clark Co. v. Industrial Comm'n*, 187 Wis. 53, 203 N.W. 737 (1925) (making toolbox for own tools); *Rock County v. Industrial Comm'n*, 185 Wis. 134, 200 N.W. 657 (1924) (riding on conveyance provided by master); *John H. Kaiser Lumber Co. v. Industrial Comm'n*, 181 Wis. 513, 195 N.W. 329 (1923) (sleeping in place provided); *Widell Co. v. Industrial Comm'n*, 180 Wis. 179, 192 N.W. 449 (1923) (employee was getting a drink); *United States Cas. Co. v. Superior Hardware Co.*, 175 Wis. 162, 184 N.W. 694 (1921) (while going from place to place on a city street); *Belle City Malleable Iron Co. v. Industrial Comm'n*, 170 Wis. 293, 174 N.W. 899 (1919) (millwright extinguishing fire); *Schroeder & Daly Co. v. Industrial Comm'n*, 169 Wis. 567, 173 N.W. 328 (1919) (while going from place to place on a city street); *Holt Lumber Co. v. Industrial Comm'n*, 168 Wis. 381, 170 N.W. 366 (1919) (sleeping in place provided); *Racine Rubber Co. v. Industrial Comm'n*, 165 Wis. 600, 162 N.W. 664 (1917) (eating lunch on the premises); *Hackley-Phelps-Bonnell Co. v. Industrial Comm'n*, 165 Wis. 586, 162 N.W. 921 (1917) (going for pay; riding on conveyance provided by master); *Vennen v. New Dells Lumber Co.*, 161 Wis. 370, 154 N.W.

*Marmolejo*, 92 Wis. 2d at 678–79. Our supreme court last addressed the personal comfort doctrine in detail in 1979 in *Marmolejo*, where the court recognized that in most Wisconsin cases where the personal comfort doctrine has been applied, "the injuries for which compensation is sought have occurred within the *time* (*i.e.*, during specific paid working hours) and *space* (*i.e.*, on the employer's premises) limitations of the person's employment." *See id.* at 680. The court recognized that in limited fact situations, recovery may also be allowed for off-premises injuries:

> In *Krause v. Western Casualty & Surety Co.*, 3 Wis. 2d 61, 87 N.W.2d 875 (1958) and *Van Roy v. Industrial Comm.*, 5 Wis. 2d 416, 92 N.W.2d 818 (1958), this court allowed an employee to recover worker's compensation benefits for injuries that occurred off the employer's premises in limited fact situations. In *Krause* and *Van Roy* the employees were injured during their *specific working hours of employment* and their excursions off the premises were either at the employer's request or with his express consent. The court in *Van Roy* emphasized that ". . . an employee who ministers to his personal comfort *during the hours of employment* is 'performing services growing out of and incidental to his employment.' " *Id.* at 426. . . .
>
> Thus, the *American Motors Corp.* case establishes that in order for the appellant to recover worker's compensation benefits pursuant to the personal comfort doctrine the employee's injuries must have been incurred on the employer's premises. The *Krause* and *Van Roy* cases allow an employee to recover worker's compensation for inju-

640 (1915) (employee was getting a drink); *Northwestern Iron Co. v. Industrial Comm'n*, 160 Wis. 633, 152 N.W. 416 (1915) (warming himself).

ries incurred off the employer's premises if the injuries are received during *specific working hours* and the employee is off the employer's premises at the employer's request or with his consent.

*Id.* at 681–82. At issue in the present case is the application of WIS. STAT. § 102.03(1)(c)1 and the personal comfort doctrine to Fry's off-premises injury.

## DISCUSSION

¶ 12. The estate argues that Fry's trip to the hospital falls within the personal comfort doctrine because like the claimant in *Van Roy*, Fry left his work site to satisfy a basic personal need, during working hours, and with his employer's consent. LIRC in its decision concedes that Fry had permission to leave his workplace to seek medical attention, but disputes whether Fry, whose salary was based on commission, was being paid at the time of the accident. In other words, the parties dispute the legal significance of the fact that Fry was paid on commission. We need not address this disputed issue, because even if Fry had consent to leave and was being paid at the time of the accident, LIRC's legal conclusion that the extent of Fry's departure from the workplace goes beyond the personal comfort doctrine is a reasonable one.

¶ 13. Presented with the application of WIS. STAT. § 102.03(1)(c)1 and the personal comfort doctrine to stipulated facts, a question of law, LIRC in its memorandum opinion stated:

In the petition for commission review the applicant asserts that the personal comfort doctrine has been applied in a wide variety of factual situations, including getting a drink, eating, sleeping, warming oneself and extinguishing a fire. The applicant

587

asserts that seeking medical attention is ministering to one's personal comfort, and therefore does not constitute abandoning employment. However, the applicant in this case abandoned his job, at least temporarily, to seek medical treatment for a nonwork related injury. In other words, the extent of the departure in this case, while understandable given the applicant's medical condition, goes beyond the personal comfort doctrine. This was therefore not in furtherance of the interests of the employer, but an errand of his own.

Applying the great weight standard of deference, we must uphold LIRC's application of § 102.03(1)(c)1 and the personal comfort doctrine unless it is unreasonable. *See Secor,* 2000 WI App at ¶ 15. We conclude that it was reasonable for LIRC to hold that an employee who makes an appointment to seek medical attention for an immediate medical need not related to his employment and leaves the workplace to do so, even if he intends to return to the workplace the same day, has temporarily abandoned his job and is no longer "performing service growing out of and incidental to his or her employment" within the meaning of § 102.03(1)(c)1.

¶ 14. Our analysis of LIRC's legal conclusion is based on our review of cases in Wisconsin and in other states. The estate fails to cite, and this court was unable to find, a single case where any court has applied the personal comfort doctrine to an employee who leaves the work premises to attend a medical appointment for a nonwork-related medical problem. Even the oft-cited Professor Arthur Larson's treatise on Worker's Compensation fails to even contemplate that such a situation would be covered by the personal comfort doctrine. *See* 2 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW, ch. 21 (2000).

¶ 15. In *Marmolejo*, our supreme court quoted with approval Larson's definition of the personal comfort doctrine, which states: "Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily can be inferred . . . ." *Id.* at 680. Applying this definition to the present case, the estate argues that Fry was acting within the time and space limits of his employment. With respect to time, it is undisputed that Fry's trip to the hospital took place during normal work hours. With respect to space, he clearly left his work premises, but *Van Roy* and *Krause* established that even some trips for personal comfort off premises can be covered by the personal comfort doctrine. *See Marmolejo*, 92 Wis. 2d at 682. Assuming *arguendo* that Fry was within the time and space limits of his employment, the estate's argument fails when we apply the next part of the definition and examine the extent of Fry's departure from his job.

¶ 16. LIRC concluded as a matter of law that the extent of Fry's departure was so great that an intent to abandon the job temporarily can be inferred. It is undisputed that Fry intended to drive to the hospital and undergo medical testing. Even though Fry planned to return to work after medical testing was completed, Fry's intended activities suggest a greater break from the work day than the activities of employees who briefly pause from work to get a drink, use the restroom or eat a snack.

¶ 17. Our supreme court has refused to establish a line of demarcation and declare that all personal com-

fort trips by an employee off the premises of the employer that fall within a certain area of space or time arise out of the employee's employment. *See Van Roy*, 5 Wis. 2d at 425. We are nevertheless satisfied that the stipulated facts in this case support LIRC's legal conclusion that Fry's trip constituted such a sufficient departure from work that LIRC could reasonably conclude that Fry intended to abandon his job temporarily, so that he was no longer performing services incidental to employment pursuant to WIS. STAT. § 102.03(1)(c)1. Each worker's compensation case is governed by its own facts and circumstances, *see United Wis. Ins. Co. v. LIRC*, 229 Wis. 2d 416, 423, 600 N.W.2d 186 (Ct. App. 1999), and in this case LIRC's conclusion of law, based on its application of § 102.03(1)(c)1 and the personal comfort doctrine to the unique facts of this case, was not unreasonable. Accordingly, we uphold the circuit court's order and LIRC's decision denying benefits. *See Secor*, 2000 WI App at ¶ 15.

*By the Court.*—Judgment affirmed.